## SHIELDS et al. v. HIGHTOWER et al.
### (8 Div. 827.)

(Supreme Court of Alabama. April 22, 1926.
Rehearing Denied May 20, 1926.)

**1. Taxation ⊂⇒568(8)—Property belonging to tax collector must first be exhausted in satisfaction of lien under his bond, then property conveyed must be exhausted in inverse order of alienation.**

Sureties on bond of defaulting tax collector having paid shortage, and seeking to be subrogated to lien of state and county upon real estate owned by collector during his term of office, must exhaust property belonging to, and remaining in possession of, collector, and then exhaust property conveyed in inverse order of alienation.

**2. Taxation ⊂⇒568(8).**

Bond of tax collector is a lien on his property from date of its execution, under Code 1923, § 2603.

**3. Taxation ⊂⇒568(8)—Rights and interests acquired by purchasers from tax collector are subordinate to lien of official bond on his property.**

Rights and interests acquired by purchasers from tax collector are subordinate to lien of his official bond on his property; such purchasers being charged with notice of the lien.

**4. Taxation ⊂⇒568(8)—Claim of permanent improvements made by subvendees of tax collector are subordinate to lien through his official bond.**

Claim for improvements, permanent in nature, made by subvendees of defaulting tax collector on property sold by him during his term of office, are subordinate to lien of state and county through his official bond.

**5. Subrogation ⊂⇒14(3)—Purchaser of mortgaged property held entitled to subrogation to mortgagee's lien which had been paid from his purchase money.**

Where tax collector sold property during term of office which he had mortgaged before he became collector, and portion of purchase price was used by purchaser to satisfy the mortgage, purchaser was entitled to subrogation to lien of mortgage.

**6. Mortgages ⊂⇒151(1).**

Lien of mortgage executed by person before he became tax collector is superior to lien under his official bond.

**7. Subrogation ⊂⇒14(3)—Grantee of purchaser entitled to subrogation is entitled to same right.**

Where purchaser of mortgaged property from tax collector was subrogated to mortgagee's lien as against lien of bond, his grantee was entitled to same right.

**8. Subrogation ⊂⇒14(1)—Purchaser of mortgaged property, whose title failed, and was defective, held entitled to subrogation to mortgagee's lien; he having assumed, and paid, mortgage.**

Where tax collector sold property, mortgaged by him before he became collector, and

purchaser, as part consideration, assumed mortgage, which he afterwards paid, purchaser's title failed, and was defective, since it was not free from lien through bond for amount of collector's default, and purchaser is therefore entitled to subrogation to mortgagee's lien.

**9. Subrogation ⊂⇒25—Purchaser of property from tax collector held not entitled to subrogation to mortgage lien on other property purchased by collector, notwithstanding collector discharged mortgage with his purchase money.**

Where tax collector purchased mortgaged property, and paid for property and mortgage with cash received from purchaser of another tract of land from him, such purchaser is not entitled to subrogation to lien of mortgage thus paid for by tax collector as against lien of collector's bond.

Appeal from Circuit Court, Limestone County; O. Kyle, Judge.

Bill in equity by L. C. Hightower and others against John W. Shields and others, and cross-bills by respondents Shields and Yarbrough. From the decree, cross-complainants appeal. Affirmed in part, reversed in part, and remanded.

E. W. Godbey, of Decatur, for appellants.

Each appellant is entitled to a sale of Robinson's remaining property, and of that sold in the inverse order of its alienation, and each appellant is entitled to be subrogated to the incumbrance paid off by his vendor, a purchaser of Robinson. Fidelity Co. v. Richeson, 213 Ala. 461, 105 So. 193; Faulk v. Calloway, 123 Ala. 325, 26 So. 504; Stone v. Davenport, 200 Ala. 396, 76 So. 312. Where a purchaser assumes a prior mortgage as part of the consideration, and the title acquired proves defective, he is entitled to be subrogated, on payment, to the lien of the old mortgage. Capitol Bank v. Holmes, 43 Colo. 154, 95 P. 314, 16 L. R. A. (N. S.) 470, 127 Am. St. Rep. 108; Hicks v. Beals, 83 Or. 82, 163 P. 83, L. R. A. 1917D, 1067; 25 R. C. L. 1353; Heisler v. Aultman, 56 Minn. 454, 57 N. W. 1053, 45 Am. St. Rep. 486. Subrogation is a creation of equity, and cannot be invoked, so as to impair the equity of others to a subrogation in their behalf. Randolph v. Billing, 115 Ala. 682, 22 So. 468; Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. Rep. 566.

R. B. Patton, of Athens, and Coleman, Coleman, Spain & Stewart, of Birmingham, for appellees.

To entitle one to the benefits of legal subrogation, the claimant must have paid the debt, and the payment must have been under compulsion. Bigelow v. Scott, 135 Ala. 236. 33 So. 546; Murphree v. Clisby, 168 Ala. 343, 52 So. 907, 29 L. R. A. (N. S.) 933; Story's Eq. (14th Ed.) § 706; 37 Cyc. 374; Sheldon on Subrogation, § 3. Where, as a part of the

consideration of land bought, one assumes an existing mortgage thereon, the purchaser becomes primarily liable for the debt. Barnett v. McMillan, 176 Ala. 430, 58 So. 400; Morris v. Fidelity Co., 187 Ala. 263, 65 So. 810; People's Sav. Bank v. Jordan, 200 Ala. 500, 76 So. 442; Mitchell v. Hickman, 208 Ala. 344, 94 So. 284; Harris, Subrogation, § 136. If payment of the mortgage debt is made by a party who is personally and primarily liable, such payment operates ipso facto to end the mortgage and to destroy the lien. Pomeroy's Eq. Jur. (3d Ed.) § 1213; Sheldon, Subrogation, § 46; Jones on Mortgages (7th Ed.) § 740; 27 Cyc. 1331; 37 Cyc. 374. Purchasers acquiring title through an officer whose bond is a lien can acquire no right or interest which is not subordinate to it. Randolph v. Billing, 115 Ala. 682, 22 So. 468; Randolph v. Brown, 115 Ala. 677, 22 So. 524; Jackson Co. v. Derrick, 117 Ala. 348, 23 So. 193; Yarbrough v. Hightower, 211 Ala. 262, 100 So. 126.

MILLER, J. This cause has been here before on decree overruling demurrers to the bill of complaint as amended. Yarbrough v. Hightower, 211 Ala. 262, 100 So. 126. The bill, as amended, was filed by the sureties on the official bond of E. C. Robinson as tax collector of Limestone county. The tax collector defaulted. His sureties on his official bond paid the shortage, which was reduced to judgment against them. The complainants, the sureties, seek to be subrogated to the lien of the state and county under the statute upon certain real estate owned by E. C. Robinson during his term of office, which was sold by him to the different respondents, or to their respective vendors, and on some real estate still owned by him on which he gave a mortgage during his term of office to C. Pepper, Sr., to secure the sum of $4,000.

John W. Shields and C. A. Yarbrough, respondents, each filed separate answers in the nature of cross-bills, by which each sought to have the property of E. C. Robinson first sold, and, if that was insufficient to pay the judgment satisfied by the complainants, then to have sold that property of Robinson that was owned and conveyed by him during his term of office in the inverse order of its alienation, and to have these respective cross-complainants subrogated to the rights and interests of incumbrancers that held incumbrances on their respective lands prior to E. C. Robinson's becoming tax collector, and that were paid .off with funds furnished by the respective grantors of these respective cross-complainants, and who were grantees of E. C. Robinson, and "also to be subrogated to incumbrances which appellants' funds or their respective grantors' paid off that were on the land deeded to Robinson before the deeds were made"; and for payment for permanent improvements made by them on the land.

214 ALA.—39

The complainants and the defendant C. Pepper, Sr., demurred to each cross-bill and to parts of each cross-bill. The court by decree sustained demurrers of C. Pepper, Sr., "to the cross-bill of John W. Shields and C. A. Yarbrough." The court by decree ordered that demurrer of complainants to the cross-bill of C. A. Yarbrough and the demurrer of complainants to paragraphs 3, 4, 5, 8, and 9 of said cross-bill be, and the same are hereby, sustained; and the court by decree ordered that the demurrer of complainants to the cross-bill of John W. Shields and the demurrer of the same parties to paragraphs 3, 4, 5, 8, and 9 thereof be, and the same are, sustained. It thus appears the court sustained demurrers of Pepper to each cross-bill as a whole, and the court sustained demurrers of the complainants to each cross-bill as a whole and to parts of each cross-bill. These decrees are appealed from separately by John W. Shields and C. A. Yarbrough, and each assigns separately each decree as error.

[1] It appears that E. C. Robinson now owns some real estate which was owned by him during his term of office; and that during his term of office he sold and conveyed at different times to different persons certain real estate mentioned in the amended bill and in the cross-bills. These cross-complainants are vendees or subvendees of some of this real estate, and they have an equitable right, and are entitled in equity, to have complainants exhaust, first, the property belonging to and remaining in possession of E. C. Robinson in satisfaction of the lien of the state and county, which they paid; and, if that property of Robinson is insufficient to satisfy the same, then complainants must sell and exhaust that property conveyed by Robinson in the inverse order of its alienation. This equitable principle is clearly stated in 34 C. J. 618, § 942, headnote 39. It has been approved by this court in Relfe v. Bibb, 43 Ala. 519, 520; Gordon v. Bell, 50 Ala. 213, 220; N. W. L. Ass'n v. Harris, 114 Ala. 468, 21 So. 999. These averments in each cross-bill gave it equity, and the court erred when it sustained the demurrers to the cross-bills and to parts of the cross-bills seeking such relief. Authorities supra.

[2-4] This bond of the tax collector, Robinson, is a lien upon the property of Robinson from the date of its execution. Section 2603, Code of 1923. And purchasers from Robinson of his real estate "are charged by law with notice of the lien, and can acquire no right or interest which is not subordinate to it." Knighton v. Curry, 62 Ala. 404, and Randolph v. Brown, 115 Ala. 677, 682, 22 So. 524. The cross-complainants are each subvendees of Robinson, the tax collector, and each knew, or had constructive notice, when the improvements were made by them on the land, that the state and county had a lien on the property, which was owned by Robinson

during the term of his office. The improvements, permanent in nature, made by cross-complainants on their respective pieces of real estate would not be a claim superior to the lien of the state and county through the bond of the tax collector thereon, to which lien the complainants seek to be subrogated. Faulk v. Calloway, 123 Ala. 325, 334, 26 So. 504; Yarbrough v. Hightower, 211 Ala. 262, 100 So. 126; and authorities supra. It results that the demurrers to that part of the cross-bills seeking payment for permanent improvements on the land made by them respectively were properly sustained by the court. Authorities supra.

[5] Robinson entered on the duties of the office of tax collector on October 1, 1917, and served out his term, which ended September 30, 1921. Robinson conveyed by warranty deed, with usual covenants, certain land, on December 11, 1917, to Critz Wallace for a recited cash consideration of $6,000. It was duly recorded on January 12, 1918. Robinson had, on October 15, 1913, executed to W. T. Sanders as administrator a mortgage on this land, which he sold and conveyed to Critz Wallace, and the amount due and unpaid on said mortgage was $2,140.14, when Wallace purchased the land from Robinson; and $2,140.14 of this purchase money of Wallace's was used by Wallace to pay and satisfy this mortgage to Sanders as administrator. Wallace by this conveyance purchased and secured from Robinson his equity of redemption in this land, and, on his paying off this prior mortgage thereon, he thereby became entitled to be subrogated to the rights of the mortgagee, and this mortgage was given by Robinson on this land before he became tax collector, and was a superior lien on the land to the extent of the debt secured ($2,140.14) and paid by Wallace to the lien of the state and county under the bond of Robinson.

This court, in Fidelity & Deposit Co. v. Richeson, 213 Ala. 461, 105 So. 193, stated the rule as follows:

"The purchaser of an equity of redemption upon paying off prior mortgages is subrogated to the rights of the mortgagees paid off, the mortgages paid being considered part of the purchaser's title to the premises."

See, also, Faulk v. Calloway, 123 Ala. 325, 26 So. 504; Stone v. Davenport, 200 Ala. 396, 76 So. 312.

[6, 7] Wallace was entitled to equitable subrogation to the lien of the mortgage of Sanders, as administrator, to the extent that his purchase money was used by him in payment and discharge of this real estate from the mortgage. See Fouche v. Swain, 80 Ala. 151, and authorities, supra. And this mortgage lien on the land to the extent of the debt paid by Wallace's money would be a prior lien on the land to the lien of complainants. Authorities supra. Wallace, by warranty deed with general covenants, sold and conveyed this land to G. A. Yarbrough, cross-complainant, for $7,000 on January 14, 1919. Wallace by this deed sold and conveyed to this cross-complainant such title as he received from Robinson with the same equitable priority over complainant's lien. By this purchase and conveyance from Wallace to this cross-complainant he became entitled to be subrogated to the lien of the mortgage of Sanders, as administrator, on the land to the same extent that Wallace, his vendor, was entitled to it. Yarbrough stands in Wallace's shoes, and he is entitled to the same rights and to the same protection as Wallace. Faulk v. Calloway, 123 Ala. 325, 26 So. 504; Fid. & Dep. Co. v. Richeson, 213 Ala. 461, 105 So. 193. It results that the court erred in sustaining demurrers to the cross-bill of Yarbrough seeking to be subrogated to the lien of the mortgage of Sanders, as administrator, on the land to the extent of the balance of the amount due and paid thereon by the money of his vendor, Wallace. Authorities supra.

[8] It appears from the bill as amended and the cross-bill of John W. Shields that on March 8, 1916, Robinson, before he became tax collector, bought certain land mentioned in this cross-bill as the Shields land. Robinson, on June 26, 1916, before he became tax collector, executed a mortgage on this land to D. E. Wolfe to secure the sum of $1,200. Robinson, on November 27, 1918, sold and conveyed this land to S. Hardison in consideration of $3,000, including the assumption of this $1,200 mortgage to Wolfe on this land by Hardison. Hardison afterwards paid and satisfied in full this $1,200 mortgage to Wolfe. This title of Hardison to this land fails, and is defective, in that it was not free from liens on account of the bond of Robinson and the lien of the county and state on this land through the bond for the amount due the state and county caused by default of Robinson. This title of Hardison fails as aforesaid, and part of the purchase money was paid by him as the purchaser in paying the mortgage lien of Wolfe thereon, and this entitles Hardison to be subrogated to the rights of Wolfe, the mortgagee paid by him.

In 25 R. C. L. 1353, we find this general text:

"And the rule supported by the weight of authority is that, when a purchaser pays off a prior incumbrance as a part of the purchase price without actual notice of a junior lien, it will be presumed that he paid the same for his own benefit and the protection of his own interests, and equity will treat him as the assignee of the original incumbrance, and will revive and enforce it for his benefit. Having caused the same to be satisfied under circumstances authorizing an inference of mistake of fact, equity will presume such mistake in order to give the party the benefit of the equitable right of subrogation, and, in so doing, prevent

manifest injustice and hardship, without interfering with intervening equities."

In Faulk v. Calloway, 123 Ala. 333, 26 So. 506, this court quoted with approval the following:

"The principle we have announced is recognized in the doctrine so tersely stated in 24 Am. & Eng. Encyc. of Law, 257, which is in this language; 'It is held that, if the purchaser expressly assumes to pay the incumbrance, he thereby becomes the principal debtor, primarily and absolutely liable for the debt, and may not be subrogated to the benefit of the incumbrance upon making payment according to his contract. And, generally speaking, to entitle a purchaser to subrogation the claim which he satisfies must be such as would be enforceable against the land in his hands. If the purchaser's title fails, and the purchase money has been applied to the payment of liens and incumbrances on the property, he will be subrogated to the rights of the holders of such claims.' "

See, also, Fid. & Dep. Co. v. Richeson, 213 Ala. 461, 105 So. 193, and Stone v. Davenport, 200 Ala. 396, 76 So. 312.

Hardison sold and conveyed this land to John W. Shields, this cross-complainant, on December 31, 1919. Shields, as purchaser from Hardison, "stands in the latter's shoes, and is entitled to the same protection," with the same equitable right to be subrogated to the rights of Wolfe, the mortgagee paid by his vendor, and with the same equitable priority over the lien of complainants. Fid. & Dep. Co. v. Richeson, 213 Ala. 461, 105 So. 193.

It results that the court erred in sustaining demurrers of complainants and of defendant Pepper, Sr., to this cross-bill of Shields seeking to be subrogated to the lien of the Wolfe mortgage on the land to the extent of the balance due thereon which was paid by his vendor, Hardison. Authorities supra.

[9] The cross-bill of Shields alleges Robinson purchased certain land from Whitt on November 27, 1918, while he was tax collector, and assumed as part of the purchase price a mortgage thereon given by Whitt to one Hall. Robinson paid the cash price to Whitt, and this Hall mortgage with money received by him from Hardison as the purchase price of the other and different land conveyed by Robinson to Hardison, hereinbefore mentioned, which land Hardison afterwards sold to Shields. Shields now seeks to be subrogated to the rights of the mortgagee, Hall. Shields claims no title to the Whitt land in this Hall mortgage. Robinson conveyed and sold no part of this land to Hardison, the vendor of Shields, and Hardison did not convey it to Shields. There is no contractual relation between Robinson and Hardison, and Hardison and Shields, as to this land in this Hall mortgage. Shields has no title or interest in it. Shields connects himself in no

way with the Whitt land. It results that the court properly sustained the demurrers of complainants and defendant Pepper, Sr., to that part of this cross-bill of Shields which seeks to be subrogated to the lien of the Hall mortgage. Authorities supra.

The decree is affirmed in part, and reversed in part, and the cause will be remanded for decree to be rendered in accordance with this opinion. The complainants are taxed with one-half, and defendant C. Pepper, Sr., with the other one-half of the costs of this appeal.

Affirmed in part, and in part reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.