142 So. 564

**WHITSON et al. v. METROPOLITAN LIFE INS. CO.**

6 Div. 117.

Supreme Court of Alabama.

May 26, 1932.

Rehearing Denied June 18, 1932.

Cabaniss & Johnston and K. E. Cooper, all of Birmingham, for appellee.

Walter S. Smith, Clark Williams and Wm. H. Burr, all of Birmingham, for appellants.

264

BROWN, J.

The bill in this case was filed by the appellee, Metropolitan Life Insurance Company, against B. W. Whitson, Sarah C. Whitson, and Bethel Whitson, a minor, seeking to cancel and expunge from the record in the probate office of Jefferson county, an entry of satisfaction by the complainant, of a mortgage executed by B. W. Whitson and Sarah C. Whitson to Jemison & Co., Inc., to secure an indebtedness of $2,400, said mortgage together with the indebtedness secured thereby being transferred and assigned to complainant, and to re-establish and revivify said mortgage, under the doctrine of equitable subrogation, as a security for money advanced by Jemison & Co. to B. W. Whitson and secured by a second mortgage, to discharge the indebtedness thereby secured, and to foreclose the same.

The averments of the bill, in substance, are that, on February 23, 1923, said B. W. Whitson and Sarah C. Whitson, who was at that time his wife, executed said first mortgage to Jemison & Co., Incorporated, to secure a loan of $2,400 made by the mortgagee to said B. W. Whitson, said mortgage covering a house and lot in the city of Birmingham occupied by the mortgagor and his wife as a homestead, the wife joining in the execution to release her homestead and dower rights. The mortgage was duly executed and recorded, and soon thereafter was assigned, together with the indebtedness thereby secured, to the complainant.

Before the mortgage debt was fully paid, a breach in the marital relation between Whitson and his wife resulted in a suit for divorce by the wife against the husband because of his infidelity, culminating in a decree dissolving the bonds of matrimony on March 10, 1926. The decree of divorce, in accordance with the agreement of the parties, granted to the said Sarah C. Whitson alimony, payable in installments of $100 per month, with the right for herself and minor child, Bethel, to occupy the home, the subject-matter of the present controversy, during her life or until she married, free of rent and the payment of taxes, with conditions that: "If, by mutual agreement between the complainant and the defendant, the house is sold before the death or marriage of the said Sarah C. Whitson, then and in that event, the said Sarah C. Whitson is to receive one-half of the net proceeds from said sale. If the said B. W. Whitson should die before the marriage or death of the said Sarah C. Whitson, the said house is to become the property of the said Sarah C. Whitson and the minor child, Bethel Whitson, in equal shares. The said B. W. Whitson shall pay the taxes, insurance, necessary repairs to be contracted for by him, *and payments as they become due on the said house,* and the said Sarah C. Whitson shall pay all the other expenses of maintaining said home for herself and the said minor child. The said Sarah C. Whitson shall furnish food for the said minor child, Bethel Whitson, and the said B. W. Whitson shall pay all the other expenses of the said Bethel Whitson.

"In the event the ill health or failure in business of the said B. W. Whitson should render him unable to pay the $100.00 per month alimony as herein provided, then and in that event the said house and lot known as 1130 North 13th Street, Birmingham, Alabama, shall be and become the property of the said Sarah C. Whitson." (Italics supplied.)

On April 26, 1926, about one and a half months after the decree was entered in the divorce proceedings, the bill alleges that the said B. W. Whitson, *while still the owner of said property* and joined by his wife Mabel E. Whitson, executed a mortgage on said property to Jemison & Company, Inc., to secure a principal indebtedness of Thirty-three Hundred ($3300.00) Dollars which mortgage was filed for record" on April 30, 1926, and recorded therein; that the mortgage together with the notes secured thereby was for value duly assigned by Jemison & Co., Inc., to complainant, the assignment being recorded in the probate office; that $2,001.45, advanced by Jemison & Co. to B. W. Whitson as a loan, by and with his consent, was paid by Jemison & Co. to complainant in full satisfaction of the mortgage of February 23, 1923, and was accepted by the complainant in satisfaction thereof and the mortgage cancelled of record. (Italics supplied.)

That the said B. W. Whitson made default in the payment of the indebtedness secured by the mortgage of April 26, 1926, and complainant, on October 6, 1930, foreclosed the same under the power of sale and became the purchaser thereof, and a deed was duly executed to it vesting in it all the rights, title, and interest of the said B. W. Whitson and his wife, Mabel E. Whitson, in and to the property. Thereupon complainant made de-

mand on Sarah C. Whitson for possession of the property, and' she refused to surrender possession, asserting her title and ownership under the decree of divorce granting the property to her and her minor child.

"Complainant further avers that although said divorce decree was rendered on March 10, 1926, several days before the execution to Jemison & Company, Inc., of said Thirty-Three Hundred Dollar mortgage, neither the complainant nor said Jemison & Company, Inc., *had any notice thereof* or of the existence of any rights in and to said property in respondent until such 'demand for possession was made as above set out." (Italics supplied.)

That "at the time of the rendition of said decree, a copy of which is attached hereto as Exhibit 'D,' the lien of said mortgage made by Bethel W. Whitson and his then wife, the said Sarah C. Whitson, on, to-wit, the 23rd day of February, 1923, was in full force and effect and all rights acquired by the said Sarah C. Whitson in and to said real estate under said decree were subject and subordinate to the rights of complainant under such mortgage. When the said mortgage made on, to-wit, the 26th day of April, 1926, was executed Jemison & Company, Inc., *had no knowledge or information as to the existence of said decree,* the facts in reference thereto being fraudulently concealed by the said Bethel W. Whitson, who, in order to induce the said Jemison & Company to make to him a new loan of $3300.00, to be secured by mortgage, which was executed as aforesaid on the 26th day of April, 1926, represented to said Jemison & Company, Inc., that he was in peaceable possession of said premises, that they were free and clear of all encumbrances by virtue of any proceeding in any Court and of all other liens of every nature and sort whatsoever recorded and unrecorded. On the faith of such representation, which was made in the form of a solemn affidavit, Jemison & Company, Inc., made said loan of $3300.00 to said Bethel W. Whitson and took the said mortgage of date April 26th, 1926, to secure the payment of same and, contemporaneously therewith, the said former mortgage was satisfied out of the proceeds of the loan so made, as hereinbefore set forth. Complainant avers that said loan would not have been made and said former mortgage would not have been satisfied if Jemison & Company, Inc., had known of the existence of said decree and the rights of the said Sarah C. Whitson thereunder." (Italics supplied.)

The complainant in its bill offers to do equity.

The answer merely denies the allegations of the bill.

The evidence sustains the averments of the bill except in two respects: First, that, at the time the second mortgage was given, B.

W. Whitson was the owner of the property, and, second, that, at the time Jemison & Co., Inc., took the second mortgage and advanced the money, it had no notice of the existence of the decree "or of the existence of any rights in and to said property in respondent" (as we construe this averment), Sarah C. Whitson; and that said Jemison & Co., Inc., "had no knowledge or information as to the existence of said decree, the facts in reference thereto being fraudulently concealed by the said Bethel W. Whitson," etc.

The proof offered by the complainant—the decree which was made an exhibit to the bill and noted in the testimony—shows that said Whitson had, at most, a mere equity of redemption which had been impressed with a trust to the use of Sarah C. Whitson and her minor child, Bethel, and that said B. W. Whitson was charged with the duty and obligation of paying the indebtedness, keeping the property in repair and paying the taxes. That Whitson's interest was subject to be defeated by his failure to pay the installments of alimony or by his death, and, when so defeated, the title would vest in Sarah C. Whitson.

The evidence further shows that Whitson informed the witness Feld, who acted for Jemison & Co. in taking the application for the second loan and inspecting the property, that he (Whitson) and his wife, Mabel, were living in the Dulion Apartments; that he had recently obtained a divorce from his former wife, Sarah C.; that when Feld inspected the property he was permitted to inspect the interior of the building and was let in by some one; that he did not see or talk with Mrs. Sarah C. Whitson, who was in the actual possession, occupying the house as a home.

The evidence further shows that the first mortgage executed to the same party as the second was signed by B. W. Whitson and his then wife, Sarah C., and that the second mortgage was executed by said B. W. Whitson and his wife, Mabel; that the first mortgage was assigned to the complainant and its payment guaranteed by the mortgagee; that the sum of $1,998.80 was paid to the complainant by Jemison & Co. by and with the consent of B. W. Whitson, and was received by the complainant in full satisfaction of the first mortgage which was canceled of record by the complainant acting through A. B. Tanner, its duly constituted attorney in fact, said Tanner also being the vice president of Jemison & Co.

The second mortgage, after default was made in the payment of the indebtedness secured, was duly foreclosed under the power of sale and purchased by the complainant to whom a deed under the foreclosure was executed. This deed was accepted by the complainant and filed for record in the probate office.

On the day the transaction for the second loan was closed, April 29, 1926, B. W. Whitson made an affidavit in which he stated that the property embraced in the mortgage had been held "by him and preceding owners for the period of twenty years last passed, and upward, and that said possession had been peaceable and undisturbed, and that the title had never been disputed or questioned to his knowledge or belief; that no person has any contract for the purchase of said premises or any part hereof; nor does deponent know any facts by reason of which said possession of or title to said premises, or any part thereof, might be disputed or questioned;" and that said property was free of all incumbrances, decrees, etc.

The evidence shows, however, that on April 20, 1926, the loan was approved, and the mortgage executed on April 23, 1926.

The evidence further shows that the debt secured by the first mortgage was contracted by B. W. Whitson, who executed his note therefor.

The evidence is further without dispute that the respondent Sarah C. Whitson had no notice or knowledge of Whitson's effort to secure the second loan, and she had no connection therewith.

In these circumstances there is no basis for the application of the doctrine of *conventional subrogation*, which must rest upon an agreement between the parties that the prior lien discharged shall stand as a security for the money advanced to satisfy the claim of the prior lienor. Scott v. Land, Mortgage, Investment & Agency Co., Ltd., of America, 127 Ala. 161, 28 So. 709.

The doctrine of equitable subrogation, on the other hand, is a creature of equity, and where money is advanced at the instance of one liable to pay it in order to extinguish a prior incumbrance, and is used for that purpose with the just expectation on the part of the lender, for obtaining security of equal dignity with the prior incumbrance, and for any reason the security taken in the second transaction is adjudged to be defective, the lender or mortgagee may be subrogated to the right of the prior incumbrancer, whose claim he had satisfied, *there being no intervening equity to prevent*. The essence of this doctrine is that equity does not allow the incumbrance to become satisfied as to the advancer of the money for such purposes, but, as to him, keeps it as alive as though it had been assigned him as security for the money. Scott v. Land, Mortgage, Invest. & Agency Co., Ltd., of America, supra.

The rule established by the weight of authorities, however, is that one who advances money to discharge a prior incumbrance at the instance of the mortgagor need not exercise the highest degree of care to discover an intervening incumbrance of the title, and mere constructive notice, imputed from the existence of recordation, is not sufficient to preclude him from invoking the doctrine of equitable subrogation in the absence of culpable negligence. He must, however, be ignorant of such intervening incumbrance or right, and cannot shut his eyes and ignore facts brought to his knowledge, reasonably sufficient to invite diligent inquiry, which, if followed, would result in actual knowledge. Troyer v. Bank of DeQueen, 170 Ark. 703, 281 S. W. 14; Coonrod v. Kelly, 56 C. C. A. 353, 119 F. 841; Mather v. Jenswold, 72 Iowa, 550, 32 N. W. 512, 34 N. W. 327; Ft. Dodge B. & L. Ass'n v. Scott, 86 Iowa, 431, 53 N. W. 283; Webber v. Frye, 199 Iowa, 448, 202 N. W. 1; Merchants' & M. Bank v. Tillman, 106 Ga. 55, 31 S. E. 794; 70 A. L. R. Annotated, pages 1398–1413.

The right of equitable subrogation—or legal subrogation, and equitable assignment, as it is termed in some of the authorities—is a mere equitable cause of action, and the complainant, claiming as assignee of the second mortgage, stands in the shoes of Jemison & Co., Inc., and takes the equitable right burdened with its infirmities, and it was essential to the equity of the bill that complainant allege that it and its transferor was without notice or knowledge of the intervening incumbrance. 5 Pom. Eq. Juris. §§ 2349, 2351; New England Mortgage Security Co. v. Fry, 143 Ala. 637, 42 So. 57, 111 Am. St. Rep. 62.

The averment being negative in form, however, it met the burden of proof by showing that Jemison & Co. advanced money to discharge the prior incumbrance, and that the money was so applied with reasonable expectation that the second mortgage would constitute a first mortgage or lien on the property. First Avenue Coal & Lumber Co. v. King et al., 193 Ala. 438, 69 So. 549; Lamar v. Lincoln Reserve Life Ins. Co., 222 Ala. 60, 131 So. 223; Reeder v. Cox, 218 Ala. 182, 118 So. 338; Hatter et al. v. Quina et al., 216 Ala. 225, 113 So. 47; Mount Vernon-Woodberry Mills v. Little, 222 Ala. 605, 133 So. 710.

By such allegations and proof, the burden was shifted to the respondent claiming a superior intervening right to prove notice or knowledge, and plead in her answer or specially in bar, and prove negligence on the part of Jemison & Co., Inc., and that her intervening equity or right would be injuriously affected—an affirmative defense—and to this end the mere general denial in the answer was not sufficient. Sims Ch. Pr. § 490; New England Mortgage Security Co. v. Fry, supra.

The respondent Sarah C. Whitson, however, had the right to redeem, and it was essential to the equity of the bill that this right should be recognized by an offer to do equity. New England Mortgage Security Co. v. Fry, 143 Ala. 637, 42 So. 57, 111 Am. St. Rep. 62.

The debt secured by the first mortgage, as the undisputed evidence shows, was the debt of B. W. Whitson for which Mrs. Sarah C. Whitson was not legally liable, and she had no connection with the creation of the second mortgage, and was in no way responsible therefor. Therefore, it would be unjust and inequitable to require her to pay more than what was actually advanced by Jemison & Co. to discharge the indebtedness secured by the first mortgage, or to burden her rights with the litigation brought about by the fraud of Whitson, and the lax handling of the transaction by the complainant's successor in right, Jemison & Co., and the delay of complainant in seeking to establish its right of subrogation.

The decree of the circuit court is, therefore, corrected so as to allow Sarah C. Whitson, the appellant, to redeem the property by paying into the registry of the court, the sum of $1,998.80, the amount actually paid to discharge said first mortgage, without interest or attorney's fees, within ninety days from the filing of the mandate of this court with the register of the circuit court. Faulk et al. v. Calloway, 123 Ala. 325, 26 So. 504. If the right of redemption is exercised by the said Sarah C. Whitson, she will be subrogated to all the rights and incidents of said first mortgage. 2 Pom. Eq. Juris. 799.

The appellee will pay the costs of this appeal, and the costs accruing in the circuit court are taxed against the respondent, B. W. Whitson. The decree in other respects is affirmed.

Corrected and affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.