Bruce Brooks, Elizabeth Brooks, and AmSouth Bank, N.A. ("purchasers"), appeal from a judgment denying their requests *Page 1164 
for equitable subrogation to the rights of Ono East, Inc. ("Ono East"), the holder of a real estate mortgage senior to one held on the same real estate by Jefferson Federal Savings and Loan Association of Birmingham ("Jefferson Federal"). We reverse and remand.
On April 20, 1984, Ono East conveyed a parcel of real estate to Yeager Realty Corporation ("Yeager") by a vendor's lien deed, which secured the unpaid portion of the purchase price by a vendor's lien. On April 26, 1984, Yeager conveyed the real estate by a vendor's lien deed to Russell and Linda Judkins. On December 4, 1984, Russell and Linda Judkins conveyed the real estate by an "assumption warranty deed" to William Youngblood wherein, in conjunction with a "correction deed and ratification of vendor's lien" dated July 17, 1986, Youngblood assumed the outstanding indebtedness to Yeager and Ono East.
On October 26, 1989, Mr. Youngblood, by warranty deed, conveyed the real estate to Bruce and Elizabeth Brooks for $35,000. Mr. and Mrs. Brooks borrowed $28,000 of the purchase price from AmSouth Bank, N.A. ("AmSouth"), giving AmSouth a mortgage on the property to secure the indebtedness. At the time of this purchase, the balance due to Ono East was $19,546.77.
The purchasers placed the purchase price in escrow with Southern Land Title, Inc. ("Southern Land"). Southern Land satisfied the outstanding indebtedness from the money held in escrow and subsequently received notices from Ono East and Yeager of the cancellations of the liens.
Southern Land also conducted a title search and, according to the testimony of its president, Joel Lusk, discovered the vendor's liens reserved in the deeds given by Ono East and Yeager. Southern Land subsequently issued owner's and mortgagee's title policies to the Brookses and to AmSouth. Southern Land's title search failed, however, to reveal a mortgage on the property given by Mr. Youngblood to Jefferson Federal to secure a loan in the amount of $24,000 and recorded on May 9, 1989.[1] The existence of the intervening encumbrances was also unknown to the purchasers at the time of the Brookses' purchase of the property.
When, early in 1990, Jefferson Federal instituted foreclosure proceedings, the purchasers began the instant litigation, seeking to be subrogated to the right of Ono East to the satisfaction of its lien in the amount of $19,546.77. The trial court denied the request and held Jefferson Federal's lien to be first in priority "and superior to the lien or incumbrance of any other party hereto," followed by the liens held by First Alabama and AmSouth in second and third positions of priority, respectively. The purchasers appealed.
At the outset, we note that the operative facts in this case are not in dispute; consequently, the ore tenus rule has no application. Stiles v. Brown, 380 So.2d 792 (Ala. 1980);Kessler v. Stough, 361 So.2d 1048 (Ala. 1978); Perdue v.Roberts, 294 Ala. 194, 314 So.2d 280 (1975).
In Shields v. Hightower, 214 Ala. 608, 108 So. 525 (1926), this Court cited with approval the following rule: " '[W]hen a purchaser pays off a prior incumbrance as a part of the purchase price without actual notice of a junior lien, . . . equity will treat him as the assignee of the original incumbrance, and will revive and enforce it for his benefit.' "Id. at 610-11, 108 So. at 528 (quoting 25 R.C.L. 1353). (Emphasis added.) " 'Having caused the same to be satisfied under circumstances authorizing an inference of mistake of fact, equity will presume such mistake in order to give the party the benefit of the equitable right of subrogation, and, in so doing, prevent manifest injustice and hardship, without interfering with intervening equities." Id. See In re Hubbard,89 B.R. 920 (Bankr.N.D.Ala. 1988); Restatement (Second) ofRestitution § 31 (Tentative Draft No. 2, 1984); D. Dobbs,Handbook on the Law of *Page 1165 Remedies § 4.3 (1973); see also Gautney v. Gautney, 253 Ala. 584,587, 46 So.2d 198, 200 (1950) ("purchaser of an equity of redemption upon paying off prior mortgages is subrogated to the rights of the mortgagees paid off, the mortgages paid being considered part of the purchaser's title." (Quoting Fidelity Deposit Co. of Maryland v. Richeson, 213 Ala. 461, 462,105 So. 193, 194 (1925).)
It must be noted that the Court's reference inShields to "actual notice" was made only in passing. Nevertheless, it is clear that in order to qualify for relief under this doctrine, one "need not exercise the highest degree of care to discover an intervening incumbrance of the title, and mere constructive notice, imputed from the existence of recordation, is not sufficient to preclude him from invoking the doctrine of equitable subrogation in the absence ofculpable negligence." Whitson v. Metropolitan Life Ins. Co.,225 Ala. 262, 266, 142 So. 564, 567 (1932) (emphasis added); see also 73 Am.Jur.2d Subrogation § 104 (1974).
In this connection, Jefferson Federal contends that "the burden is on the [purchasers] in this case to prove the negative. That is, [Jefferson Federal] need not prove theexistence of culpable neglect, but, rather, the [purchasers] must affirmatively prove the absence of culpable neglect."Brief of Appellee, at 12 (emphasis in original). This contention is, however, contrary to the following rule:
 "The averment [of lack of notice] being negative in form . . . [the complainant] met the burden of proof by showing that [the complainant's assignor] advanced money to discharge the prior incumbrance, and that the money was so applied with reasonable expectation that the second mortgage would constitute a first mortgage or lien on the property.
 "By such allegations and proof, the burden was shifted to the respondent claiming a superior intervening right to prove notice or knowledge, and . . . negligence on the part of the [assignor], and that her intervening equity or right would be injuriously affected — an affirmative defense — and to this end the mere general denial in the answer was not sufficient."
Whitson v. Metropolitan Life Ins. Co., 225 Ala. 262, 266,142 So. 564, 568 (1932) (emphasis added) (citations omitted); see also New England Mortgage Security Co. v. Fry, 143 Ala. 637,42 So. 57 (1904).
Because the rule requires more than "constructive notice, imputed from the existence of recordation," to deny subrogation upon mere proof that a recorded encumbrance was overlooked would effectively eviscerate the rule. In other words, something more than simple negligence is required. In reHubbard, 89 B.R. 920 (Bankr.N.D.Ala. 1988). Moreover, once the party seeking subrogation has made a prima facie showing of absence of knowledge or notice, the burden shifts to the party opposing subrogation to prove that the purchasers' ignorance resulted from "culpable neglect." Whitson v. Metropolitan LifeIns. Co., 225 Ala. 262, 266, 142 So. 564, 568 (1932).
It is undisputed that the purchasers had no actual notice of the intervening Jefferson Federal lien. Regarding Southern Land's failure to discover the lien through its title search, its president testified as follows:
 "Q. [By counsel for purchasers] Do you have any idea how your company missed those mortgages when you did the search for the title commitment? "A. No, we really don't. It could have been human error, computer error, a lot of factors.
 "Q. Have you previously had problems with the computers in the Probate Court of Baldwin County about liens not being indexed properly?
"A. Yes, sir."
Based on this showing, the burden shifted to Jefferson Federal to produce facts demonstrating culpability on the part of the purchasers. Because no such showing has been made, equitable subrogation cannot be denied on this ground.
"In enforcing the right of subrogation, the purpose always is to make the *Page 1166 
application of equitable principles to the particular facts and to effectuate the administration of natural justice between all parties concerned. That is the real doctrine of subrogation."Federal Land Bank v. Henderson, Black Merrill Co., 253 Ala. 54,62, 42 So.2d 829, 836 (1949). "One will not be permitted to secure an advantage to the prejudice of another; nor will his rights be diminished in any degree to further the interest of such other." Id. There was no evidence that Jefferson Federal would be "burdened or embarrassed" by the subrogation. SeeFederal Land Bank, 253 Ala. at 61, 42 So.2d at 835 (intervening lienor was not burdened or embarrassed where its position remained unaltered regardless of subrogation); see also MutualLife Ins. Co. of New York v. Grissett, 500 F. Supp. 159
(M.D.Ala. 1980). Jefferson Federal knew at the time it advanced the money to Mr. Youngblood that its lien was junior to that held by Ono East. In addition, Jefferson Federal's branch manager, Marilyn Graham, conceded that Jefferson Federal's position after subrogation would be identical to that which it would have occupied had it been forced to foreclose on the mortgage before the cancellation of the Ono East lien. If, however, Jefferson Federal, through Southern Land's error, replaces Ono East in priority, it would incur a windfall in the sum of $19,546.77 at the expense of the purchasers, who, without knowledge of the intervening lien, discharged the debt to Ono East. Such a result is inconsistent with principles of equity and justice.
Our analysis of the law and the equities of this case compel us to conclude that the trial court erred in denying the request for subrogation to the rights of Ono East. Consequently, the judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur.
[1] The title search also failed to reveal the existence of a mortgage given by Youngblood to First Alabama Bank and recorded on May 12, 1989, to secure a loan in the amount of $22,568. First Alabama Bank failed to answer or to appear at trial. Consequently, a default judgment was entered against that defendant.