LYONS, Justice.
 

 Gail Foster appeals from the denial of her postjudgment motion to alter, amend, or vacate a summary judgment entered in favor of Porter Bridge Loan Company, Inc. (“Porter”), in Foster’s declaratory-judgment action. We affirm.
 

 Factual Background and Procedural History
 

 The material facts of this case are undisputed. Jessie Derrell McBrayer, an attorney, owned real property in Jefferson County (“the property”). In October 2003, Ocean Bank recorded a mortgage on the property. Ocean Bank assigned its mortgage to Yale Mortgage Corporation (‘Yale”) in October 2004; the parties do not dispute that Yale recorded that mortgage. In December 2005, Foster, a former client of McBrayer’s, obtained a judg
 
 *483
 
 ment against him in the amount of $428,000. On January 8, 2006, Foster recorded the judgment pursuant to § 6-9-210, Ala.Code 1975,
 
 [1]
 
 and thereby obtained a hen against the real property pursuant to § 6-9-211, Ala.Code 1975
 
 [2]
 
 (“the judgment lien”). It is undisputed that she obtained the judgment against McBrayer, identifying him as “Derrell McBrayer.”
 

 In late 2005 or early 2006, McBrayer applied to Porter for a loan to refinance the existing mortgage held by Yale (“the Yale mortgage”). On January 23, 2006, while Porter was processing the loan application, Land Title Company of Alabama (“Land Title”) conducted a title search of the property for the purpose of issuing title insurance. Although it conducted a search using the name “Derrell McBrayer,” Land Title did not locate the judgment lien, and, as a result, Porter did not gain actual knowledge of it before approving the loan application.
 

 Porter lent McBrayer $592,000 to refinance the Yale mortgage. The loan closed on February 1, 2006; the Yale mortgage was paid in full; the proceeds remaining after the mortgage was paid — $48,000— were distributed to McBrayer. At the loan closing, McBrayer executed an affidavit affirming that there were no judgments or liens pending against him. Specifically, McBrayer affirmed: “That there are no pending suits, proceedings, judgments, bankruptcies, liens or executions against said owner, either in [Jefferson] county or any other county in [Alabama].” McBrayer also executed an affidavit stating that he did not have notice of any judgment having been filed against him. In that affidavit, McBrayer affirmed: “I have always been known as J. Derrell McBrayer, and have never been known by any other name. I do not have any unpaid obligations except current bills, neither have I received any notice of any suit judgments having been filed against me.” Porter received a mortgage on the property securing the loan. Porter recorded its mortgage (“the Porter mortgage”) on February 8, 2006. Porter first learned of the judgment lien in June 2006. By July 2006, McBrayer had defaulted on the loan.
 

 On December 4, 2006, Foster filed a complaint against Porter in the Jefferson Circuit Court seeking a judgment declaring that the judgment lien was superior to the Porter mortgage. Porter moved for a summary judgment, arguing that a declaration that the judgment hen had priority over the Porter mortgage would grant Foster a windfall to which she was not entitled. Porter also argued that, under the doctrine of equitable subrogation, it was entitled to assume Yale’s undisputed position of priority over the judgment lien. On May 22, 2008, the trial court entered a summary judgment in favor of Porter, finding that the doctrine of equitable sub-rogation applied and that, as a result, the Porter mortgage had priority over the judgment lien. Foster moved to alter, amend, or vacate the judgment pursuant to Rule 59(e), Ala. R. Civ. P. After a hearing, the trial court denied the motion on September 12, 2008. Foster appealed.
 

 Standard of Review
 

 “Whether to grant relief under Rule 59(e), Ala. R. Civ. P., is within the trial court’s discretion.”
 
 Bradley v. Town of
 
 
 *484
 

 Argo,
 
 2 So.3d 819, 823 (Ala.2008). However, when the facts are undisputed and the “ ‘ruling [is] a reconsideration of a question of law, ... the standard of review is
 
 de novo.’
 
 ” 2 So.3d at 824 (quoting
 
 Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int’l Union Local 4-487,
 
 328 F.3d 818, 820 (5th Cir.2003), applying the analogous Rule 59(e), Fed.R.Civ.P.).
 

 Analysis
 

 Generally, when a judgment creditor obtains a lien against property pursuant to §§ 6-9-210 and -211, Ala. Code 1975, the judgment creditor “is protected against
 
 subsequently recorded instruments ....
 
 ”
 
 Smith v. Arrow Transp. Co.,
 
 571 So.2d 1003, 1006 (Ala.1990) (emphasis added); see also § 35-4-90, Ala. Code 1975.
 
 [3]
 
 Accordingly, Foster contends that the judgment lien, which she recorded on January 3, 2006, has priority over the Porter mortgage, which was recorded on February 8, 2006.
 

 Porter admits that its mortgage was recorded after the judgment lien. However, it contends that it is entitled to assume Yale’s position of priority under the doctrine of equitable subrogation. This Court has stated the elements of equitable subrogation as follows:
 

 “(1) The loan or advancement must have been made and used to pay off the debt secured by the prior lien and it is the lender’s duty to see that the money is so applied, for the right of subrogation does not arise when the money advanced is to be applied at the discretion of the debtor; (2) the parties must contemplate that the lender will have security of equal dignity with the lien discharged by the payment; (3) the whole debt must be paid before subrogation can be enforced, that is, pro tanto subrogation is not recognized; (4) the lender at the time of the loan must be ignorant of the intervening lien or encumbrance and such ignorance must not be the consequence of culpable negligence; (5) the intervening lienor must not be burdened or embarrassed.”
 

 Federal Land Bank of New Orleans v. Henderson, Black & Merrill Co.,
 
 253 Ala. 54, 59, 42 So.2d 829, 833 (1949). See also
 
 Ex parte Lawson,
 
 6 So.3d 7, 12 (Ala.2008).
 

 The parties disagree regarding the correct application of the fourth element of equitable subrogation — ignorance of the lender at the time of the loan as to the intervening lien — to the circumstances presented in this case. Porter contends that because it did not have
 
 actual knowledge
 
 of the judgment hen, the fourth element is satisfied. Foster contends that the fourth element is not satisfied because, she argues, Porter had
 
 constructive notice
 
 of the judgment lien pursuant to § 6-9-211, which provides, in part: “The filing of [a] certificate of judgment, as provided in Section 6-9-210, shall be notice to all persons of the existence of the lien thereby created.” The question whether the doctrine of equitable subrogation may apply to subordinate a judgment lien to a lien evidenced by an instrument filed after the judgment hen is a question of first impression for this Court.
 

 This Court has previously held that constructive notice of an intervening encumbrance is not sufficient to preclude the operation of the doctrine of equitable sub-rogation. In
 
 Whitson v. Metropolitan Life
 
 
 *485
 

 Insurance Co.,
 
 225 Ala. 262, 142 So. 564 (1932), this Court explained:
 

 “The rule established by the weight of authorities, however, is that one who advances money to discharge a prior incumbrance at the instance of the mortgagor need not exercise the highest degree of care to discover an intervening incumbrance of the title, and
 
 mere constructive notice, imputed from the existence of recordation, is not sufficient to preclude him from invoking the doctrine of equitable subrogation in the absence of culpable negligence.
 
 He must, however, be ignorant of such intervening incumbrance or right, and cannot shut his eyes and ignore facts brought to his knowledge, reasonably sufficient to invite diligent inquiry, which, if followed, would result in actual knowledge.”
 

 225 Ala. at 266, 142 So. at 567-68 (emphasis added); see also
 
 Federal Land Bank,
 
 253 Ala. at 60-61, 42 So.2d at 834 (applying the above-quoted rule when refinancing mortgagee did not have actual knowledge of an intervening mortgage).
 

 Similarly, in
 
 Brooks v. Resolution Trust Corp.,
 
 599 So.2d 1163 (Ala.1992), a case in which the mortgagee satisfying a vendor’s lien was ignorant of an intervening mortgage, this Court applied the principles stated in
 
 Whitson.
 
 This Court stated:
 

 “In
 
 Shields v. Hightower,
 
 214 Ala. 608, 108 So. 525 (1926), this Court cited with approval the following rule: ‘ “[W]hen a purchaser pays off a prior incumbrance as a part of the purchase price without
 
 actual notice
 
 of a junior lien, ... equity will treat him as the assignee of the original incumbrance, and will revive and enforce it for his benefit.” ’
 
 Id.
 
 at 610-11, 108 So. at 528 (quoting 25 R.C.L. 1353). (Emphasis added.) ‘ “Having caused the same to be satisfied under circumstances authorizing an inference of mistake of fact, equity will presume such mistake in order to give the party the benefit of the equitable right of subrogation, and, in so doing, prevent manifest injustice and hardship, without interfering with intervening equities.” ’
 
 Id. ....
 

 “It must be noted that the Court’s reference in
 
 Shields
 
 to ‘actual notice’ was made only in passing. Nevertheless, it is clear that in order to qualify for relief under this doctrine, one ‘need not exercise the highest degree of care to discover an intervening incumbrance of the title, and mere constructive notice, imputed from the existence of re-cordation, is not sufficient to preclude him from invoking the doctrine of equitable subrogation in the absence of
 
 culpable negligence.’ Whitson v. Metropolitan Life Ins. Co.,
 
 225 Ala. 262, 266, 142 So. 564, 567 (1932) (emphasis added); see also 73 Am.Jur.2d
 
 Subrogation
 
 § 104 (1974).”
 

 599 So.2d at 1064-65. Further, in explaining the burdens applied to the parties in
 
 Brooks
 
 under the doctrine of equitable subrogation, this Court stated:
 

 “Because the rule requires more than ‘constructive notice, imputed from the existence of recordation,’ to deny subro-gation upon mere proof that a recorded encumbrance was overlooked would effectively eviscerate the rule. In other words, something more than simple negligence is required.
 
 In re Hubbard,
 
 89 B.R. 920 (Bankr.N.D.Ala.1988). Moreover, once the party seeking subrogation has made a
 
 prima facie
 
 showing of absence of knowledge or notice, the
 
 burden shifts
 
 to the party opposing subrogation to prove that the purchasers’ ignorance resulted from ‘culpable neglect.’
 
 Whitson v. Metropolitan Life Ins. Co.,
 
 225 Ala. 262, 266, 142 So. 564, 568 (1932).”
 

 599 So.2d at 1165.
 

 Whitson
 
 and
 
 Brooks
 
 demonstrate the position of this Court that constructive no
 
 *486
 
 tice generally will not preclude the application of the doctrine of equitable subrogation. This position is consistent with a majority of other courts. The Supreme Court of Colorado aptly explained the majority, minority, and
 
 Restatement
 
 views in
 
 Hicks v. Londre,
 
 125 P.3d 452 (Colo.2006).
 

 “With regard to knowledge, the majority of courts that have considered the issue hold that ‘actual knowledge [of an intervening lien] precludes the application of equitable subrogation, but constructive knowledge does not.’
 
 Bank of New York [v. Nally
 
 ], 820 N.E.2d [644,] 652 [ (Ind.2005) ];
 
 Houston [v. Bank of America Fed. Sav. Bank,
 
 119 Nev. 485, 488], 78 P.3d [71,] 73 [(2003)]. The rationale underlying this approach is that a mortgagee who pays a preexisting obligation without actual knowledge of an intervening encumbrance possesses the reasonable expectation of stepping into the shoes of the prior mortgagee.
 
 See Lamb Excavation, Inc. [v. Chase Manhattan Mortgage Corp.,
 
 208 Ariz. 478, 481], 95 P.3d [542,] 545 [ (Ariz.Ct.App.2004) ]. Critics of the majority view contend it fosters willful ignorance by encouraging prospective mortgagees to forgo conducting title searches so that they might later claim lack of actual knowledge.
 
 See Houston,
 
 [119 Nev. at 488,] 78 P.3d at 73.
 

 “Unlike the majority view, a minority of jurisdictions hold that either actual or constructive knowledge of an intervening lien bars equitable subrogation.
 
 See Kuhn v. Nat’l Bank of Holton,
 
 74 Kan. 456, 87 P. 551, 552-53 (1906). This approach has been criticized as obviating the doctrine completely.
 
 See Capitol Nat’l Bank [v. Holmes],
 
 43 Colo. [154,] 160, 95 P. [314,] 316 [ (1908) ] (recognizing that because a debt must always be recorded in order to attach as a lien, constructive notice will always preclude equitable subrogation ‘except when ... unnecessary and unimportant’);
 
 see also Kim [v. Lee,
 
 145 Wash.2d 79, 98], 31 P.3d [665,] 675 [(2001)] (Sanders, J., dissenting) (if constructive knowledge were sufficient to defeat equitable sub-rogation, there would be no such doctrine since absent a prior filing or recording there would be no priority to contest); Restatement (Third) of Prop.: Mortgages § 7.6 cmt. a (preclusion of equitable subrogation based on actual or constructive knowledge permits a junior lienholder to be promoted in priority and receive an unwarranted and unjust windfall);
 
 Houston,
 
 [119 Nev. at 488,] 78 P.3d at 73 (same).
 

 “An alternative to the majority and minority views is offered by the Restatement (Third) of Prop.: Mortgages, section 7.6. The Restatement provides that equitable subrogation may be applied so long as the putative subrogee was promised repayment, reasonably expected to receive a security interest in the property with the priority of the discharged mortgage, and the intervening lienholder suffers no prejudice. Restatement (Third) of Prop.: Mortgages, § 7.6(a)(4). Thus, unlike the majority and minority views, the Restatement does not hinge application of the doctrine on the potential subrogee’s knowledge of the intervening lien, but rather on the subrogee’s expectations and the likelihood of prejudice to the intervening lienholder.
 
 See Lamb Excavation, Inc.,
 
 [208 Ariz. at 481,] 95 P.3d at 545;
 
 Kim,
 
 [145 Wash.2d at 98,] 31 P.3d at 670.”
 

 125 P.3d at 458. See also
 
 Lawson,
 
 6 So.3d at 15 (discussed infra, identifying the position expressed in
 
 Restatement (Third) of Property,
 
 but deeming it unnecessary under the facts presented to decide the issue whether to embrace the
 
 Restatement
 
 view that a refinancing mortgagee’s actual or constructive knowledge of intervening
 
 *487
 
 liens did not automatically preclude a court from applying the doctrine of equitable subrogation).
 

 Other states adopting the majority view have applied the doctrine of equitable subrogation in circumstances where the party seeking subrogation has constructive notice, but not actual notice, of a judgment lien. See, e.g.,
 
 G.E. Capital Mortgage Servs., Inc. v. Levenson,
 
 338 Md. 227, 242, 657 A.2d 1170, 1177 (1995);
 
 Dodge City of Spartanburg, Inc. v. Jones,
 
 317 S.C. 491, 494-95, 454 S.E.2d 918, 920-21 (S.C.Ct. App.1995). In accordance with the traditional rule of this State applied in
 
 Whitson
 
 and its progeny and with the majority view that constructive knowledge does not preclude the application of the doctrine of equitable subrogation, we hold that the constructive notice resulting from a judgment lien created under § 6-9-211 does not satisfy the knowledge requirement of equitable subrogation so as to preclude the application of that doctrine.
 

 Foster contends that this result conflicts with this Court’s recent decision in
 
 Ex parte Lawson,
 
 supra. In
 
 Lawson,
 
 this Court held that “the constructive notice supplied by the materialman’s lien statute defeats the lenders’ equitable-subrogation claim.” 6 So.3d at 14. This decision was based on the language of the material-man’s lien statute, § 35-11-211, Ala.Code 1975, which expressly provides that mate-rialman’s liens “shall have priority over all other liens, mortgages or incumbrances created subsequent to the commencement of work on the building or improvement.” In light of the express legislative intent, this Court determined that to hold otherwise would “ ‘violate the equitable maxim that equity follows the law.’ ” 6 So.3d at 14 (quoting
 
 Richards v. Security Pacific Nat’l Bank,
 
 849 P.2d 606, 611 (Utah Ct.App.1993)).
 

 Notably, in reaching a decision in
 
 Lawson,
 
 this Court did not overrule
 
 Whitson
 
 or
 
 Brooks.
 
 Rather, this Court distinguished
 
 Whitson
 
 and
 
 Brooks
 
 on the ground that neither case involved the application of the materialman’s lien statute. 6 So.3d at 13. Accordingly, it is apparent that this Court’s decision in
 
 Lawson
 
 was based on the unique language of the mate-rialman’s hen statute, which granted priority to materialman’s liens.
 

 Like
 
 Whitson
 
 and
 
 Brooks,
 
 this case does not involve the materialman’s lien statute. In her brief, Foster relies heavily on the statutes applicable to judgment liens, §§ 6-9-210, 6-9-211, and 35-4-90; however, none of these statutes contains language similar to the language in the materialman’s lien statute expressing a legislative intent that the materialman’s lien have priority. Indeed, § 35-4-90, on which Foster places much emphasis, explains general recording principles with respect to the conveyance of real property. Its language does not elevate judgment liens in terms of priority as did the applicable materialman’s lien statute in
 
 Lawson.
 
 Absent similar language regarding judgment hens, this Court’s decision in
 
 Lawson
 
 is not controlling, and our decision in this ease does not run afoul of the maxim that equity follows the law. Stated differently, because the legislature has not expressed with regard to judgment liens, as it has with regard to materialman’s hens, its intent that the hen should have a special status of priority, our apphcation of the traditional rules of equitable subro-gation as against a judgment hen does not depart from the law. Moreover, such a result is consistent with
 
 Lawson
 
 in the avoidance of windfalls. In
 
 Lawson,
 
 rejecting the priority of the materialman over the second lender would have given the second lender a windfall — receiving the benefit of improvements to the real property without paying for them. Here,
 
 *488
 
 rejecting the priority of the judgment creditor over the second lender avoids a windfall to the judgment creditor, who is in no worse position than she was before the fortuity of the refinancing of the Yale mortgage.
 

 Accordingly, to the extent Porter satisfied the Yale mortgage, it was entitled to assume the priority position of the Yale mortgage via the doctrine of equitable sub-rogation so long as its ignorance of the judgment lien was not a result of culpable negligence.
 
 Federal Land Bank,
 
 supra. Foster contends that Land Title “ignore[dJ facts brought to [its] knowledge, reasonably sufficient to invite diligent inquiry, which, if followed, would result in actual knowledge.”
 
 Whitson,
 
 225 Ala. at 266, 142 So. at 568. Specifically, Foster points to evidence indicating that Land Title knew McBrayer’s name, under which the judgment lien was recorded, but nonetheless failed to discover the lien. Foster contends that Land Title’s failure can be imputed to Porter because, according to Foster, Land Title was acting as Porter’s agent with respect to the title search. Foster also notes that Land Title discovered another judgment lien against McBrayer and that Porter took steps to ensure that that lien had been satisfied. Porter denies that Land Title was acting as its agent, noting Porter’s lack of authority over Land Title and Land Title’s independent motive for conducting the search — to support its issuance of title insurance. Porter cites
 
 Wallace v. Frontier Bank, N.A.,
 
 903 So.2d 792, 801 (Ala.2004) (declining to impute knowledge of title insurer to purchasers of real property absent proof of an agency relationship); accord
 
 Federal Land Bank,
 
 253 Ala. at 61, 42 So.2d at 835. Porter also denies that it had knowledge of facts requiring it to conduct a more diligent inquiry.
 

 A diligent search would have disclosed the judgment lien. However, even if we assume that Porter negligently relied on Land Title (and there is no evidence to support that conclusion), this Court has stated: “If all persons who negligently confer an economic benefit upon another are disqualified from equitable relief because of their negligence, then the law of restitution, which was conceived in order to prevent unjust enrichment, would be of little or no value.”
 
 Ex parte AmSouth Mortgage Co.,
 
 679 So.2d 251, 255 (Ala.1996). Furthermore, as this Court stated in
 
 Brooks,
 
 “something more than simple negligence is required” to preclude the operation of the doctrine of equitable sub-rogation. 599 So.2d at 1165. There must be evidence indicating that in failing to discover the judgment lien Porter was
 
 culpably negligent.
 
 However, Foster has not directed this Court to any evidence showing the existence of an agency relationship between Porter and Land Title. Nor has she shown that Porter had such knowledge in its possession that would have invited diligent inquiry that would result in actual knowledge. Indeed, Porter had two affidavits from McBrayer stating that no judgments or liens against the property existed. Although there is evidence indicating that Porter did not find the judgment lien, there is no evidence showing “something more than simple negligence.”
 
 Brooks,
 
 supra.
 

 Conclusion
 

 Based on the foregoing, we hold that the trial court correctly determined that the doctrine of equitable subrogation applied to the Porter mortgage so that Porter assumed Yale’s position of priority to the extent Porter satisfied the Yale mortgage. Therefore, we affirm the trial court’s summary judgment for Porter.
 

 AFFIRMED.
 

 
 *489
 
 COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 [1]
 

 . Section 6-9-210 provides, in part: “The owner of any judgment entered in any court of this state ... may file in the office of the judge of probate of any county of this state a certificate of the clerk or register of the court by which the judgment was entered ...."
 

 [2]
 

 .
 
 Section 6-9-211 provides, in part: "Every judgment, a certificate of which has been filed as provided in Section 6-9-210, shall be a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution ....''
 

 [3]
 

 . Section 35-4-90(a) provides: "All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.”