42 So.2d 829
**FEDERAL LAND BANK OF NEW OR-
LEANS v. HENDERSON, BLACK &
MERRILL CO. et al.**

4 Div. 451.

Supreme Court of Alabama.
Nov. 10, 1949.

56

Calvin Poole and W. J. Williamson, of Greenville, for appellant.

Sentell & Sentell, of Luverne, for appellees.

LAWSON, Justice.

The appeal is from a final decree of the circuit court of Crenshaw County, in equity. The bill was filed by the appellant, The Federal Land Bank of New Orleans, against Henderson, Black and Merrill Company, a corporation, and Jim Raiborn. By amendment R. T. Hughes was made a party respondent. The complainant, The Federal Land Bank of New Orleans, will be hereinafter referred to as the Bank and the respondent, Henderson, Black and Merrill Company, will be referred to as the Henderson Company.

On January 10, 1925, the respondent Jim Raiborn bought forty-five acres of land in Crenshaw County, the subject matter of this suit, from the respondent R.T. Hughes, and executed a purchase-money mortgage thereon for approximately $1,600. The mortgage was duly recorded on January 13, 1925.

On October 19, 1926, respondent Jim Raiborn made application to the Bank through the Pike County National Farm Loan Association for a loan of $2,000, offering as security the same forty-five acres of land. In the said application it was recited that the purpose of the loan was to pay a balance of $1,334 on the Hughes mortgage and to build a barn and fence on the land. The application did not show any mortgage against the land except the Hughes mortgage, that is, the purchase-money mortgage. Applicant agreed to furnish, at his expense, an abstract or certificate of title, acceptable in form to the Bank, which would show a perfect title in him and that the mortgage given to secure the loan would be a first mortgage on the property.

On October 30, 1926, the Bank received from the Pike County National Farm Loan Association the application for loan made by the respondent Jim Raiborn on October 19, 1926. It appears from a certificate executed by George M. Grant, Secretary-Treasurer of the Pike County National Farm Loan Association, that the board of directors of said association recommended to the Bank that a loan not exceeding $1,300 be made to the respondent Jim Raiborn.

On November 1, 1926, the day after the aforementioned application and recommendation reached the Bank, the respondent Jim Raiborn executed a mortgage on the same forty-five acres of land to the Henderson Company to secure a note in the sum of $575 due January 1, 1927.

On January 17, 1927, the executive committee of the Bank approved the application of the respondent Jim Raiborn for a loan of $900. Raiborn was notified on January 21, 1927, that a loan of $900 had been approved and that the Bank would proceed further upon receipt of abstract of title. Raiborn was furnished with a list of attorneys approved by the Bank and was instructed to select from that list an attorney to prepare his abstract of title.

On January 26, 1927, the mortgage executed by Raiborn to the Henderson Company on November 1, 1926, was recorded.

At the request of Raiborn, an abstract of title was prepared by Hon. George M. Grant, who was at the time a practicing attorney of Troy, Alabama, and who was on the list of attorneys approved by the Bank. Mr. Grant, as before indicated, was the Secretary-Treasurer of the Pike County National Farm Loan Association. On February 21, 1927, Mr. Grant, as attorney for Raiborn, the borrower, executed the customary abstractor's certificate, which in effect stated that the abstract properly enumerated and set forth all recorded instruments affecting the title to the land here involved. The abstract did not show the mortgage to the Henderson Company executed on November 1, 1926, and recorded January 26, 1927. The abstract prepared by Mr. Grant was received by the Bank on February 24, 1927. Thereafter, the Bank had prepared a note for $900 and a mortgage in that amount covering the land involved here, which were sent to Mr. Grant to be executed, recorded, and returned to the Bank.

Jim Raiborn signed a note in the sum of $900, bearing date of March 1, 1927. Raiborn and his wife appear to have signed

58

the mortgage on March 1, 1927, although their acknowledgements are dated March 11, 1927.

The mortgage bears the following endorsement:

"In consideration of the Federal Land Bank of New Orleans making the grantor in the mortgage the loan hereby secured, the Pike County National Farm Loan Association of Troy, Alabama, as provided by § Eleven of the Federal Farm Loan Act, does hereby endorse and become liable for the indebtedness secured by this mortgage; the Grantor therein being a shareholder in said Association.

"In Witness whereof the said Pike County, National Farm Loan Association of Troy, Alabama, has caused this endorsement to be executed for it and in its name by its president, attested by its secretary.

"The Pike County National Farm Loan Association, of Troy, Alabama,
                        "By, G. F. Youngblood
"Attest.                 As its President.
"George M. Grant, as
"Secretary-Treasurer."

The mortgage to the Bank was filed for record on March 15, 1927.

On March 19, 1927, Mr. Grant, as attorney for Jim Raiborn, executed what is termed a lien certificate which, among other things, stated that the mortgage had been recorded "and will constitute a valid first lien on the property therein described when the liens listed in the above lien certificate have been paid and cancelled of record." The mortgage of Raiborn to Hughes, under date of January 10, 1925, that is, the purchase-money mortgage, was listed, but not the mortgage to the Henderson Company executed on November 1, 1926, and recorded January 26, 1927.

The note, mortgage, and lien certificate were forwarded by Mr. Grant to the Bank. Thereafter, on March 23, 1927, the Bank issued its check in the sum of $822.24, payable to the order of Jim Raiborn, Robert T. Hughes, George M. Grant, Attorney, and George M. Grant, Secretary-Treasurer. This check was mailed by the Bank to Mr. Grant, in that it was his duty as Secretary-Treasurer of the Pike County National Farm Loan Association to handle the disbursement of the proceeds of the loan. The difference between the amount of the loan, $900, and the amount of the check seems to be attributable to certain deductions incident to the making of such loans.

It does not appear exactly when Mr. Grant received the check or when the proceeds thereof were disbursed. But it does appear that all of the payees endorsed the check and that respondent R. T. Hughes received all the proceeds thereof except $25 paid to Mr. Grant as attorney for Raiborn, $5 paid to the Pike County National Farm Loan Association, $5 for recording the mortgage, and an unspecified sum used to pay taxes on the mortgaged property. Raiborn received no part of the proceeds of the check.

Thereafter, on April 19, 1927, respondent R. T. Hughes took another mortgage from respondent Jim Raiborn on the same land in the amount of $550. This mortgage was recorded on May 9, 1927.

On May 7, 1927, two days before the mortgage last above referred to was recorded, respondent R. T. Hughes cancelled of record the mortgage executed to him on January 10, 1925, by the respondent Jim Raiborn.

On June 11, 1927, Mr. Grant as "examining attorney for the borrower," executed an instrument termed an "attorney's final certificate," which showed that the mortgage from Raiborn to Hughes under date of January 10, 1925, had been "satisfied and discharged of record" and "that the title to said lands is good and valid in fee simple in said Jim Raiborn subject only to mortgage of The Federal Land Bank of New Orleans, on the property which is described in the abstract to which my first certificate has been attached, and I further certify that from a personal inspection of the records I find where no mortgage or lien or encumbrances of any nature or character whatsoever have been inscribed against said property between the date of the execution of said deed of trust, or mortgage, and the recordation of same." This certificate was received by the Bank on June 16, 1927.

It clearly appears from the foregoing that Mr. Grant, in drawing up the abstract of title and in executing the several certificates, overlooked the mortgage from Raiborn to the Henderson Company under date of November 1, 1926, which was on record prior to the time the abstract was certified and the other certificates executed.

On April 22, 1932, the respondent Hughes transferred to the respondent Henderson Company the mortgage made to Hughes by Raiborn on April 19, 1927. This mortgage was foreclosed on May 2, 1936. The Henderson Company purchased the land at the foreclosure sale and went into possession.

The bill as amended sought to have the Bank subrogated to the rights of the respondent Hughes in the original purchase-money mortgage made by Raiborn to Hughes, that is, the mortgage under date of January 10, 1925. The bill also sought an adjustment of the equities between the Bank and the Henderson Company and to have the Bank's mortgage of March 1, 1927, foreclosed. Complainant offered to do equity in all respects.

The trial court denied relief to complainant and dismissed its bill. From that decree the complainant has appealed to this court.

■ Generally speaking, one advancing money to discharge a prior lien on property and taking a new mortgage as security is entitled to subrogation to the prior lien, as against the holder of an intervening lien of which he was ignorant. He is not a volunteer or stranger, merely paying off the debt of another in the sense that he is not entitled to subrogation. First Avenue Coal & Lumber Co. v. King et al., 193 Ala. 438, 69 So. 549; Shields et al. v. Pepper, 218 Ala. 379, 118 So. 549; Woodruff v. Satterfield et al., 199 Ala. 477, 74 So. 948; Hope of Alabama Lodge of Odd Fellows v. Chambless, 212 Ala. 444, 103 So. 54; Shaddix et al. v. National Surety Co., 221 Ala. 268, 128 So. 220. To like effect see Scott v. Land, Mortgage, Investment & Agency Co., 127 Ala. 161, 28 So. 709; Faulk et al. v. Calloway, 123 Ala. 325, 26 So. 504.

■ In Groom et al. v. Federal Land Bank of New Orleans et al., 240 Ala. 335, 199 So. 237, we enumerated certain requisites necessary to the relief here sought. Those requisites are: (1) The loan or advancement must have been made and used to pay off the debt secured by the prior lien and it is the lender's duty to see that the money is so applied, for the right of subrogation does not arise when the money advanced is to be applied at the discretion of the debtor; (2) the parties must contemplate that the lender will have security of equal dignity with the lien discharged by the payment; (3) the whole debt must be paid before subrogation can be enforced, that is, pro tanto subrogation is not recognized; (4) the lender at the time of the loan must be ignorant of the intervening lien or encumbrance and such ignorance must not be the consequence of culpable negligence; (5) the intervening lienor must not be burdened or embarrassed.

■ The evidence in this case, in our opinion, clearly shows that the Bank made the loan to the respondent Raiborn for the purpose of enabling him to pay off the debt which he owed to Hughes in the amount of the loan, less the usual charges and expenses incident to the making of such loans. We do not think the mere fact that the amount of the loan made to Raiborn was in excess of the amount of money received by Hughes deprives the Bank of the right of subrogation as to the amount received by Hughes, since it appears that the portion of the loan which Hughes did not receive was used for the purpose of paying charges, expenses, attorney's fees and taxes on the land. See Federal Land Bank of Louisville v. Lightfoot et al., 261 Ky. 463, 88 S.W.2d 21. The evidence shows that no part of the proceeds of the check issued by the Bank was paid to Raiborn. He had no discretion as to the manner in which the proceeds of the check were to be disbursed.

We are also of the opinion that the evidence shows that it was the intention of the parties to the loan that the Bank should have a first mortgage on the forty-five acres of land here involved; that is, that the lien of Hughes against the property created by the mortgage to him under date of January 10, 1925, should be discharged. The Bank could only take first mortgages.

True, the amount of the loan made by the Bank was not sufficient to pay the entire debt owed to Hughes, but we think the evidence, as it relates to events subsequently occurring, namely, the taking by Hughes of the mortgage of April 19, 1927, and the subsequent satisfaction by Hughes of the mortgage of January 10, 1925, clearly indicates that it was the intention of the Bank, Raiborn, and Hughes that the mortgage made by Raiborn to the Bank should create a lien of equal dignity with that of the purchase-money mortgage.

We come now to consider the question as to whether or not the Bank is to be deprived of the right of subrogation because of the fact that its loan was not in an amount sufficient to pay the entire debt owed by Raiborn to Hughes. As shown above, pro tanto subrogation is not permitted. Groom et al. v. Federal Land Bank of New Orleans et al., supra; Atherton v. Tesch, 202 Ala. 448, 80 So. 832. The reason for the rule is that, so long as the party whose rights are claimed for use in protecting the party who would invoke the doctrine remains unsatisfied, though in part only, there will be no interference with his rights or securities which might, even by bare possibility, prejudice or embarrass him in the collection of his claim.

In Corinth State Bank v. First Nat. Bank of Florence, 217 Ala. 632, 117 So. 216, we held in effect that where the reason for the rule does not exist, then subrogation will not be denied merely because the whole debt was not paid by the loan made by the party seeking subrogation. In other words, if it appears that subrogation can in no event prejudice, embarrass, or interfere with the rights or securities of the party whose rights are claimed for use in protecting the party who would invoke the doctrine, then the rule that the entire debt must be paid has no field of operation.

■ In Shaddix et al. v. National Surety Co. [221 Ala. 268, 128 So. 223], supra, the surety on a tax collector's bond paid a portion of the shortage of its principal's accounts. We held that the surety was entitled to be subrogated to the lien of the State and County on the tax collector's property, as the entire debt had been paid

by contributions from other sources and said that, "when only a part of the debt has been thus paid, the right of subrogation exists if the principal has paid the remainder." So, if Raiborn had actually paid to Hughes in cash the difference between the amount received by Hughes from the loan made by the Bank and the amount of the loan, then the holding in the Shaddix case, supra, would clearly apply here. But instead of paying cash, Raiborn executed to Hughes a mortgage secured by the same property in an amount practically equal to the difference between the amount of his original debt to Hughes and the amount which Hughes received from the loan to Raiborn by the Bank. This mortgage was subordinate to that of the Bank. We are clear to the conclusion that the evidence in this case supports no inference other than that in taking this subsequent mortgage from Raiborn and in cancelling the mortgage of January 10, 1925, Hughes intended that the original debt be treated as having been completely discharged. We hold, therefore, that Hughes has no further rights or interest in the mortgage of January 10, 1925, and that, therefore, to permit the Bank to be subrogated to his rights in that mortgage lien would in no wise embarrass or prejudice Hughes and that, therefore, the rule that pro tanto subrogation is not allowed has no application to this case.

■ Appellees insist that the trial court correctly denied subrogation in this case because the evidence shows that the Bank, although ignorant of the existence of the intervening lien of the Henderson Company (the mortgage under date of November 1, 1926, which was recorded on January 26, 1927), was guilty of culpable negligence in not determining the existence of such mortgage. The rule here applicable is stated in Whitson et al. v. Metropolitan Life Ins. Co., 225 Ala. 262, at page 266, 142 So. 564, at page 567, to be as follows: "The rule established by the weight of authorities, however, is that one who advances money to discharge a prior incumbrance at the instance of the mortgagor need not exercise the highest degree of care to discover an intervening incumbrance of the title, and mere constructive notice, imputed from

the existence of recordation, is not sufficient to preclude him from invoking the doctrine of equitable subrogation in the absence of culpable negligence. He must, however, be ignorant of such intervening incumbrance or right, and cannot shut his eyes and ignore facts brought to his knowledge, reasonably sufficient to invite diligent inquiry, which, if followed, would result in actual knowledge. (Cases cited)."

It is clear that the Bank was entirely ignorant of the existence of the intervening lien. So, the question remains as to whether or not the ignorance of the Bank as to the existence of the intervening lien is shown by the evidence to have resulted from culpable negligence.

■ In so contending, if we correctly understand the brief filed by their counsel, the appellees contend that such negligence does appear in that although the mortgage was on record at the time the abstractor's certificate was made, it was not included in the abstract and that the abstractor was the agent of the Bank. We have given careful consideration to the evidence as it relates to the agency of the abstractor and we are clear to the conclusion that he was the agent of Jim Raiborn and not of the Bank. True, he was the Secretary-Treasurer of the Pike County National Farm Loan Association, but this relationship in and of itself did not make him an agent of the Bank. Gantt v. Gunter et al., 225 Ala. 679, 145 So. 146; Hinds et al. v. Federal Land Bank of New Orleans, 235 Ala. 360, 179 So. 194. In the cases just cited the relationship of the National Farm Loan Associations and their officers to the Federal Land Banks is clearly shown. Nor does the fact that the abstractor's name appeared on the list of attorneys approved by the Bank make him an agent of the Bank. We think the evidence shows that the borrower, Jim Raiborn, was entirely free to choose from the list submitted to him by the Bank any attorney whose name appeared thereon to prepare his abstract of title. Mr. Grant was his choice and all certificates made by Mr. Grant relative to the existing liens against the property here involved were made as attorney for Mr. Raiborn. Any negligence of the abstractor which might appear in this case cannot be attributed to the Bank.

■ At the time Raiborn executed the mortgage to the Bank, the mortgage of the Henderson Company was in fact a second mortgage, although it did not so appear in the mortgage. The lien of the Henderson Company was subordinate to that of Hughes and, consequently, we cannot see how the Henderson Company, the intervening lienor, can be burdened, embarrassed, or prejudiced by permitting subrogation as sought by the Bank in this case.

■ The appellees further insist that subrogation was properly denied in this case for the reason that the evidence shows the Bank relied upon other security than its mortgage. In this contention appellees rely upon the following statement contained in the opinion of this court in the case of Shaddix et al. v. National Surety Co., 221 Ala. 268, 128 So. 220: "There is authority for the conclusion, that if the lender relies upon other security, he is presumed not to expect or to be entitled to subrogation. 37 Cyc. 470." True, the Pike County National Farm Loan Association endorsed the mortgage of Raiborn to the Bank and became liable for the indebtedness secured by the mortgage. This, it appears, is the usual procedure followed in all loans made by the Federal Land Bank. We do not think the statement above quoted from Shaddix et al. v. National Surety Co., supra, has application here. That statement must be construed in the light of the facts of that particular case and should not be understood as holding that the mere fact that the lender takes security other than what purports to be a first mortgage on the land will deprive him of the right to be subrogated to the lien discharged by the proceeds of the loan which the mortgage secures. Counsel for appellees also cite 50 American Jurisprudence, p. 688, Subrogation, § 10. The only two cases there noted in support of the statement that the right of subrogation does not exist where the one claiming subrogation relies on other security are Shaddix et al. v. National Surety Co., supra, and Buskirk v. State-Planters Bank & Trust Co., 113 W.Va. 764, 169 S.E. 738. The facts of the case last mentioned are

entirely different from those of the instant case.

■ The testimony in this case was not taken ore tenus before the trial judge; therefore, the decree is not supported by a presumption of verity. Under such circumstances it is our duty to consider the evidence de novo. Box v. Box, 243 Ala. 437, 10 So.2d 478; Howell v. City of Dothan, 234 Ala. 158, 174 So. 624; Fannin v. Trotter, 215 Ala. 17, 109 So. 102.

■ We have given careful and studied consideration to the evidence in this case and are constrained to the conclusion that under the evidence the Bank was entitled to subrogation as prayed for.

■ In enforcing the right of subrogation, the purpose always is to make the application of equitable principles to the particular facts and to effectuate the administration of natural justice between all parties concerned. That is the real doctrine of subrogation. One will not be permitted to secure an advantage to the prejudice of another; nor will his rights be diminished in any degree to further the interest of such other.

In arriving at this conclusion, we have considered all the evidence. Appellees have insisted that we could only review the evidence taken prior to September 30, 1939, in that the cause was submitted for final decree at that time and that since that submission was not set aside, evidence taken thereafter and subsequently noted could not be considered.

It is true that we have held that where a cause has been submitted for final decree on pleadings and proof as noted by the register, it is error to permit an amendment to the note of testimony without first setting the submission aside. Darling et al. v. Hanlon, 197 Ala. 455, 73 So. 20; Ex parte State ex rel. Brittain et al., 237 Ala. 154, 186 So. 148. However, we do not think that rule has application to the instant case. In the cases above cited it appears that the amendment to the note of testimony was made without notice to the opposing party and certainly there was nothing in those cases to indicate that the opposing party had waived the setting aside of the submission.

■ Conceding without deciding that the cause was properly submitted for final decree on September 30, 1939, we are of the opinion that respondents, appellees here, in effect consented to have the trial court consider testimony taken subsequent to that time without setting the alleged submission aside. Counsel for respondents were served with a copy of the amended bill, which was filed after the date of the alleged submission, and they forthwith interposed their answers. Thereafter counsel for the respondents entered into written agreements with counsel for complainant relative to the taking of additional testimony. True, after entering into such agreements the respondents did interpose objection to the consideration of such additional testimony, but this objection came too late. We think that in agreeing to the taking of the additional testimony they tacitly agreed that such testimony should be considered by the trial court in rendering its final decree.

The note of testimony, or note of submission, filed by complainant on May 27, 1946, was in compliance with Equity Rule 57, as amended. 1947 Cum. Pocket Part, Title 7, Appendix, Code 1940; Home Ins. Co. v. Shriner, 235 Ala. 65, 177 So. 897.

The decree of the trial court is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

BROWN, FOSTER and STAKELY, JJ., concur.