**MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a New York Corporation, Plaintiff,**

v.

**D. Charles GRISSETT et al., Defendants.**

**Civ. A. No. 79–76–S.**

United States District Court,
M. D. Alabama, S. D.

Oct. 22, 1980.
As Amended Oct. 28, 1980.

Joel W. Ramsey, Ramsey & Baxley, Daniel E. Robison, Dothan, Ala., Receiver for plaintiff.

Joe S. Pittman, Pittman, Whittaker & Hooks, Enterprise, Ala., for defendant The Federal Land Bank of New Orleans.

J. E. Sawyer, Jr., Rowe, Rowe & Sawyer, Enterprise, Ala., for defendants D. Charles Grissett and Cathy L. Grissett.

Barry E. Teague, U. S. Atty., Calvin C. Pryor, Asst. U. S. Atty., Montgomery, Ala., for defendant Administrator of the Small Business Administration.

## MEMORANDUM OPINION

### FINDINGS OF FACT

HOBBS, District Judge.

On September 30, 1975, defendant D. Charles Grissett borrowed approximately $90,000.00 from defendant Federal Land Bank (hereinafter referred to as "FLB"). In return for this loan, Grissett executed a promissory note and a first mortgage on a tract of land consisting of approximately 258 acres (hereinafter referred to as Tract II). The mortgage on Tract II was properly recorded in the Probate Office of Coffee County, Alabama (Enterprise Division), on the same day as the execution of the promissory note, September 30, 1975.

Sometime prior to February 9, 1976, Grissett borrowed approximately $90,000.00 from the Citizens Bank of Enterprise. This loan was secured by a first mortgage on a tract of land consisting of approximately 135 acres (hereinafter referred to as Tract III). The mortgage was properly recorded in the Probate Office of Coffee County, Alabama (Enterprise Division), on February 9, 1976.

On February 17, 1978, Grissett Borrowed $146,200.00 from defendant Small Business Administration (hereinafter referred to as "SBA"). In return for this loan, Grissett signed a promissory note. As security for the loan, he executed a mortgage on the two parcels of land previously mortgaged to FLB and Citizens Bank (designated Tracts II and III). This mortgage in favor of SBA was recorded in the Probate Office of Coffee County, Alabama (Enterprise Division) on March 9, 1978.

On March 10, 1978, Grissett executed a promissory note to plaintiff Mutual Life Insurance Company of New York (hereinafter referred to as "MONY") in the amount of $190,000.00. This note was secured by (1) a mortgage on Tracts II and III, which, as set out above, were already encumbered by first mortgages in favor of FLB and Citizens Bank, respectively, and a second mortgage in favor of SBA; and (2) a first mortgage on a previously unencumbered tract of land consisting of a house and less than one acre of land (hereinafter referred to as Tract I). In return for Grissett's note and mortgages on Tracts I, II and III, MONY agreed to pay off the first mortgages in favor of FLB and Citizens Bank on Tracts II and III. MONY further agreed to remit to Grissett whatever amount of the $190,000.00 loan that remained after the first mortgages held by FLB and Citizens Bank had been satisfied. Testimony of the parties makes clear that they intended through their pay–off transactions to establish first mortgages in favor of MONY on Tracts II and III, as well as on the previously unencumbered Tract I. MONY's mortgages on Tracts I, II, and III were recorded in the Probate Office of Coffee County, Alabama (Enterprise Division) on March 10, 1978.

Pursuant to its agreement with Grissett, MONY contacted the offices of the Federal Land Bank of Enterprise and the Citizens Bank of Enterprise in order to obtain pay–off figures for the first mortgages held by these parties on Tracts II and III. MONY obtained payoff figures of $87,291.25 from FLB of Enterprise and $90,727.46 from Citizens Bank of Enterprise. In both instances,

these figures were communicated orally to an agent of MONY. MONY then issued checks to the parties based on these figures. The amount paid to Citizens Bank was the correct balance owing under Citizen's first mortgage on Tract III. It is now agreed, however, that the $87,291.25 paid to FLB was not the actual amount due to FLB under its first mortgage on Tract II. The figure provided by FLB reflected an amount approximately $9,000 less than the actual amount owing to FLB under the terms of its loan to Grissett. The unpaid balance still owing to FLB includes interest and principal plus property taxes on Tract II paid by FLB to prevent a tax sale.

The check from MONY to FLB recited that the check was issued to "pay off mortgage." FLB, through its Enterprise office, issued a receipt reciting that the "Purpose of Payment" is "liquidation of loan." At trial, the principal agent of MONY in this transaction testified that it was his intention to satisfy in full FLB's mortgage on Tract II. He communicated that intention to FLB at the time he obtained the payoff figure. The check issued by MONY to satisfy FLB's mortgage was negotiated by FLB and honored by MONY's bank.

The representative of FLB testified that when the New Orleans office of FLB saw the receipt that had been given to MONY, FLB recognized immediately that a mistake had been made and called the Enterprise office to advise of the mistake which the Enterprise office had made in calculating the payoff on the loan.

The parties to the above transactions are now in sharp disagreement with respect to their priorities under the various mortgages executed by Grissett. Plaintiff MONY filed a foreclosure petition in this Court on August 17, 1979, against Grissett and his wife, SBA and FLB. Plaintiff MONY asks the Court in effect to decide the priorities of the parties under these several mortgages. Resolution of this issue requires an examination of the relevant Alabama statutes and decisions.

## CONCLUSIONS OF LAW

### Jurisdictional Statement

Plaintiff MONY is a corporation organized under the laws of the State of New York with its principal place of business in the State of New York. Defendants are D. Charles Grissett and Cathy L. Grissett, residents of the State of Alabama; the Administrator of the Small Business Administration, an agency of the government of the United States of America; and The Federal Land Bank of New Orleans, a Louisiana corporation. The Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1332(a); i. e., diversity of citizenship between parties and an amount in controversy exceeding $10,000.00, exclusive of interest and costs.

In sorting out the conflicting claims presented by this action, the Court finds it helpful to proceed with each tract individually.

*TRACT I:*

Tract I presents few difficulties. MONY holds the only mortgage on Tract I and is therefore entitled to first priority.

*TRACT II:*

The question basic to this inquiry is whether MONY is subrogated to the first mortgage of FLB and if so, to what extent is MONY so subrogated. MONY contends that it should be subrogated to the entire amount of the FLB mortgage (including the amount still owing to FLB), plus interest and attorney fees as provided for by the FLB mortgage. MONY submits further that any overage from the sale of Tract II should go to SBA and that FLB should only be allowed to collect its deficiency in the event an amount remains after the satisfaction of both the MONY and SBA mortgages.

In contrast, FLB argues that its mortgage should be given first priority to the extent of the remaining principal, interest, property taxes paid, attorney's fees and costs. The second priority, according to FLB, should be the pro tanto subrogation of the amount paid to FLB by MONY ($87,-291.25), plus interest, as provided in the FLB mortgage, attorney's fees and costs.

FLB argues that SBA should be satisfied only to the extent that funds remain after the payment of both FLB and MONY.

SBA argues that FLB should be given first priority to the extent of the unpaid balance on its prior mortgage and that SBA should be given second priority behind FLB and be satisfied out of the funds remaining after payment to FLB. Under the scheme advanced by SBA, MONY would be given third priority.

In deciding the question of priorities as to Tract II, the Court begins by observing that the concept of subrogation is recognized in Alabama. Section 35–11–2 of the Code of Alabama provides:

One who has a lien inferior to another, upon the same property, has a right:

(1) To redeem the property in the same manner as its owner might, from the superior lien; and

(2) To be subrogated to all the benefits of the superior lien, when necessary for the protection of his interests, upon satisfying the claim secured thereby.

The Supreme Court of Alabama has stated the general rule in the following way: "[O]ne advancing money to discharge a prior lien on property and taking a new mortgage as security is entitled to subrogation to the prior lien as against the holder of an intervening lien of which he was ignorant." *Federal Land Bank v. Henderson, Black & Merrill*, 253 Ala. 54, 42 So.2d 829, 833 (1949).

In elaborating on this general rule, the Supreme Court of Alabama has set out five specific requirements that must be met by a party seeking subrogation:

... (1) The loan or advancement must have been made and used to pay off the debt secured by the prior lien and it is the lender's duty to see that the money is so applied, for the right of subrogation does not arise when the money advanced is to be applied at the discretion of the debtor; (2) the parties must contemplate the lender will have security of equal dignity with the lien discharged by the payment; (3) the whole debt must be paid before subrogation can be enforced, that is, pro

tanto subrogation is not recognized; (4) the lender at the time of the loan must be ignorant of the intervening lien or encumbrance and such ignorance must not be the consequence of culpable negligence; (5) the intervening lienor must not be burdened or embarrassed.

42 So.2d 829, 833.

 Did MONY satisfy these requirements? The evidence showed that the loan from MONY to Grissett was intended by both parties to pay off the entire debt owed by Grissett to FLB and secured by a first mortgage on Tract II. The evidence also showed that MONY and Grissett intended for MONY to have a first mortgage on Tract II. Thus, the first two requirements for subrogation are easily satisfied.

The third requisite is that the entire debt must be satisfied before the subsequent mortgagee is entitled to subrogation. This requisite poses an apparent problem because FLB now insists that its mortgage was not satisfied in full. "Pro tanto subrogation," as the courts put it, "is not recognized" in Alabama. Taken literally, this requirement would prohibit subrogation by MONY since the entire debt owing to FLB under the first loan was not satisfied. However, the treatment by the Alabama Supreme Court of this third requirement in the *Henderson, Black & Merrill* case, *supra,* indicates that the complete satisfaction requirement is not always a hard and fast rule. Rather, in applying the Alabama standard, a court may consider the policy goals behind the prohibition against pro tanto subrogation. If the justifications for the rule are lacking in a particular case, the court may grant subrogation despite the fact that there has been only a partial payment of the debt by the party seeking subrogation. The case now under consideration is appropriate for such analysis.

It is the opinion of the Court that MONY's subrogation in this case will not work to the detriment of FLB and that, therefore, the rule requiring complete satisfaction of the prior debt by the party seeking subrogation has no application here. This conclusion rests on a finding by the Court that FLB has waived its priority over MONY's lien.

As already noted, FLB gave the payoff figure on its loan to MONY. It accepted a check from MONY which was hand delivered to its Enterprise office and which indicated clearly on its face that it was intended to satisfy in full the debt owing from Grissett to FLB. In return for this check, FLB's Enterprise office issued a receipt reciting that the "purpose of payment" is "liquidation of loan." By virtue of such actions, FLB is estopped under Alabama law from claiming any priority over MONY. See *Federal Land Bank of New Orleans v. First Natl. Bank of Scottsboro,* 237 Ala. 84, 185 So. 414 (1938); *Alexander City Bank v. Federal Land Bank of New Orleans,* 237 Ala. 1, 185 So. 169 (1938).

If FLB has waived its priority over MONY, or to put it more directly, if FLB can satisfy its deficiency only after MONY has been paid in full, then subrogation clearly does not work to the detriment of FLB. In fact, given the rule of estoppel applicable in this case, a failure to allow subrogation would apparently work to FLB's detriment. Failure to allow subrogation by MONY, coupled with the estoppel of FLB from asserting any claim superior to MONY, might result in the elevation of SBA to the position of first priority. But the Court need not reach that question for under the Court's holding FLB can in no way be harmed by the pro tanto subrogation of MONY.

The fourth requirement facing a party seeking subrogation is "ignorance of the intervening lien," provided such ignorance is not "the consequence of culpable negligence." There has been no convincing challenge to plaintiff MONY's allegation that it was unaware of the SBA mortgage at the time it made the loan to Grissett and received a mortgage in return. Grissett testified under oath that he never informed MONY of his indebtedness to SBA. An agent of MONY testified that a title search had been made as to all tracts involved in the loan transaction and that this title search had been updated on March 9, 1978,

the day SBA recorded its mortgage and one day prior to the date MONY closed its loan to Mr. Grissett and obtained payoff figures from FLB and Citizens Bank. There is no indication that MONY was aware of the SBA lien or that MONY was culpably negligent in its attempts to discover the existence of such a lien. The fact that SBA recorded its mortgage some twenty–four hours prior to MONY's filing of its mortgage is not sufficient to prevent subrogation by MONY. As the Supreme Court of Alabama concluded in *Whitson v. Metropolitan Life Ins. Co.*, 225 Ala. 262, 142 So. 564 (1932):

> The rule established by the weight of authorities, however, is that one who advances money to discharge a prior encumbrance at the instance of the mortgagor need not exercise the highest degree of care to discover an intervening encumbrance of the title and mere constructive notice imputed from the existence of recordation is not sufficient to preclude him from invoking the doctrine of equitable subrogation in the absence of culpable negligence.

The final requirement facing one who seeks subrogation is a showing that the intervening lienor will not "be burdened or embarrassed." In its trial brief, SBA contended that "the subrogation of MONY to the mortgages of Federal Land Bank and Citizens Bank would change the terms of said mortgage to the detriment of SBA." SBA has failed, however, to show the Court how the terms of its mortgage will be altered. At the time of its execution, SBA's mortgage was a second mortgage. SBA's lien on Tract II was subordinate to that of FLB. If the Court allows subrogation, the position of SBA remains unchanged. It will be satisfied out of the proceeds of a sale of Tract II only if the sale yields an amount in excess of the figure owing to FLB under the original first mortgage. Subrogation of MONY does nothing to alter that scheme.

For all of the above reasons, the Court concludes that MONY is subrogated to FLB's first mortgage on Tract II.

As a subrogated party to FLB's mortgage, MONY receives first priority to the extent of its payment of $87,291.25 to FLB, plus interest as provided in the FLB mortgage, attorney's fees and costs. FLB has second priority to the extent of its deficiency (remaining principal), plus interest as provided for by its mortgage, plus a reimbursement for property taxes paid, attorney's fees and costs. Any remaining funds from the sale of Tract II should be paid to SBA according to the terms of its mortgage.

The Court's decision as to the extent of MONY's subrogation and the ranking of the two other secured parties rests on the clear directions of the Supreme Court of Alabama. In *Alexander City Bank v. Federal Land Bank of New Orleans*, 237 Ala. 1, 185 So. 169 (1938), the Alabama Supreme Court faced a situation similar in many ways to the one now before this Court. There, the mortgagor had executed a first mortgage on his property in favor of plaintiff Alex. City Bank. Subsequent to the recording of this first mortgage, the mortgagor executed a second mortgage on the same property in favor of defendant Federal Land Bank. The parties to this second mortgage intended for part of the FLB loan to be used to discharge in full the mortgagor's debt to the Alex. City Bank. In turn, Federal Land Bank was to assume a first mortgage on the property in question. Alex. City Bank, however, received only partial satisfaction of the debt secured by the original mortgage. In deciding the priorities between the two secured parties, the Alabama Supreme Court first held that Alex. City was estopped from claiming priority over FLB's lien. This finding of estoppel rested on the language of the payoff check's endorsement signed by Alex. City. The court went on, however, to conclude that this finding of estoppel did not extinguish Alex. City's claim. The Alabama Supreme Court held that the estoppel should be "limited to a subordination of [Alex City Bank's] mortgage to that of the Federal Land Bank." 185 So. at 170.

Like the original mortgagee in *Alexander City Bank*, FLB in this case is estopped only from asserting priority over MONY. Whatever legitimate claims remain after the subrogated party is satisfied should be satisfied out of the proceeds of the sale of Tract II.

*TRACT III*:

The Court's resolution of priorities as to Tract II leaves few problems with respect to Tract III. As to Tract III, MONY is subrogated to the extent of its payment of $90,727.47 to the Citizens Bank of Enterprise, plus interest as provided in the Citizens Bank mortgage plus attorney's fees and costs. SBA is entitled to be satisfied out of any remaining proceeds.

The parties to this action have sought from the Court only a declaration as to their respective priorities under the various mortgages executed by Mr. Grissett. They do not seek a computation by the Court of the actual amounts due under each loan agreement. Accordingly, the order issued pursuant to this opinion will be limited to a restatement of the priorities of the parties with respect to the proceeds of a sale of the property in question.

An order will be entered in accordance with this opinion.