In re Parker Jerry Pier **HUBBARD** & Lynda Kay Hubbard, Debtors.

In re C. Michael **STILSON**, Trustee.

Dennis **CRIDDLE** & Regina Criddle Plaintiffs,

v.

**C.I.T. FINANCIAL SERVICES Defendant.**

Bankruptcy No. 85–8208.
Adv. No. 87–580.

United States Bankruptcy Court,
N.D. Alabama, W.D.

June 28, 1988.
As Amended Aug. 3, 1988.

Claude M. Burns, Jr., Tuscaloosa, Ala., Attorney for debtors.

C. Michael Stilson, Tuscaloosa, Ala., Trustee.

Stephen L. Sexton, Birmingham, Ala., for plaintiffs.

Cameron Parsons, Tuscaloosa, Ala., for defendants.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This matter came before the Court for consideration of a COMPLAINT TO AVOID LIEN AND RELEASE DEBTOR FROM FRAUD COUNT. After consideration of the trial testimony, exhibits and applicable law, it is the opinion of this Court that the release sought in the complaint filed by Dennis B. and Regina S. Criddle (hereinafter referred to as the Criddles) is due to be GRANTED. This memorandum shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FINDINGS OF FACT

On October 2, 1979, Helen Sanders and her husband Jessie C. Sanders (hereinafter referred to as the Sanders) conveyed approximately 20 acres of land to Lynda Hubbard and Parker Jerry Hubbard (hereinafter referred to as the Hubbards). On October 3, 1979, the deed was recorded along with an $18,000.00 mortgage which had been executed by the Hubbards. The mortgage[1] and the deed[2] were both recorded in the Tuscaloosa County Probate Judge's Office.

Five and a half years later, the Hubbards agreed to sell approximately half of the mortgaged land to Dennis and Regina Criddle (hereinafter referred to as the Criddles). In contemplation of the sale, the Hubbards accepted a Bond for Title from the Criddles whereby the Criddles agreed to assume the remaining mortgage indebtedness due to the Sanders. The Bond for Title was executed sometime in April of 1985, but the instrument was never recorded (see Trustee's exhibit # 1).

On October 22, 1985, C.I.T. Financial Services, Inc. (hereinafter referred to as C.I.T.) recorded a certificate of judgment against the Hubbards. According to the certificate, C.I.T. obtained the judgment against the Hubbards on September 6, 1985, in the amount of $10,070.66 plus $72.00 court cost (see Trustee's exhibit # 2).

On November 22, 1985, the Criddles, in fulfillment of their obligation under the Bond for Title, sent a check in the amount of $8,773.19 to the Sanders. According to the Criddles, this was the amount needed to satisfy the Hubbards' mortgage. On that same day, the Hubbards conveyed the land in question to the Criddles by way of warranty deed. In that deed, the Hubbards stated that the land was free from any encumbrances despite the fact that the C.I.T. lien, which had been recorded in October, remained unsatisfied. The warranty deed and the satisfaction of the Hubbards' mortgage were both recorded on December 13, 1985.[3]

Four days later, the Hubbards filed this voluntary Chapter 7 petition. C. Michael Stilson, the Case Trustee, subsequently filed a complaint to avoid C.I.T.'s lien as it effected property of the bankrupt estate. The Trustee based his complaint of Section 547 of the Bankruptcy Code which provides in pertinent part for the avoiding of lien filed within 90 days of the filing of a bank-

---

1. The Hubbard's mortgage to the Sanders, which was introduced at trial as Trustee's exhibit # 7, is recorded at Mortgage Book 1233 Page 503.

2. The deed, which was introduced at trial as Trustee's exhibit # 4, is recorded at Deed Book 792 Page 164.

3. The warranty deed was introduced at trial as Trustee's exhibit # 3. The "satisfaction of mortgage" form was introduced as Trustee's exhibit # 8.

ruptcy petition. A judgment in the Trustee's favor was rendered on March 25, 1987.[4]

On September 16, 1987, the Criddles filed an adversary complaint against C.I.T. in an attempt to prevent C.I.T. from looking to their land in satisfaction of the judgment obtained against the Hubbards. As stated earlier, C.I.T. recorded its certificate of judgment prior to the transfer from the Hubbards' to the Criddles. In their complaint, the Criddles asserted that they were entitled to be subrogated to any rights previously held by the Sanders on their mortgage against the Hubbards. The Criddles based their assertion on the fact that (1) they had paid off the Hubbards' mortgage and (2) that they had enhanced C.I.T.'s position when the mortgage was paid. The Trustee and C.I.T. both opposed the Criddles complaint on the grounds that (1) the payment of the mortgage was made merely in fulfillment of the Criddles' obligation under the Bond for Title and (2) that the Criddles had been negligent in failing to conduct a timely title search.[5]

This Court must now decide whether the Criddles are entitled to priority over C.I.T. under the doctrine of equitable subrogation.

4. In the order granting judgment, it was stated that C.I.T.'s lien would attach to any proceeds that arose as a result of the sale of the Hubbards' property.

5. On May 21, 1985, the Criddles obtained a commitment for title insurance. However, no update to the commitment was made between May and November. Thus, the Trustee and C.I.T. assert that the Criddles assumed the risk of a title defect when they failed to check the Hubbard's chain of title immediately before closing.

6. Carter v. Carter, 251 Ala. 598 38 So.2d 557 (1949). For additional cases dealing with the doctrine of equitable subrogation see generally Industrial Development Board of Town of Section, Alabama v. Fuqua Industries, Inc., 523 F.2d 1226 (5th Cir.1975) (Construing Alabama Law); Pipola v. Chicco, 274 F.2d 909 (2nd Cir.1960); Federal Land Bank of New Orleans v. Henderson, Black and Merrill Co., 253 Ala. 54, 42 So.2d 829 (1949); Groom v. Federal Land Bank of New Orleans, 240 Ala. 335, 199 So. 237 (1940); Alexander City Bank v. Federal Land Bank of New Orleans, 237 Ala. 1, 185 So. 169 (1938); Schuessler v. Shelnutt, 233 Ala. 188, 171 So. 259 (1936); Ewing v. Bay Minette Land Co., 232 Ala.

## CONCLUSIONS OF LAW

The doctrine of subrogation is founded in equity.[6] Numerous Alabama cases have invoked the doctrine of subrogation where one advancing money to discharge a prior lien on property is entitled to be subrogated to the rights of such prior lien as against intervening lienors. Ind. Dev. Bd. of Tn. of Section, Ala. v. Fuqua Industries, Inc., 523 F.2d 1226 (5th Cir.1975) discusses the doctrine of subrogation in Alabama. Reinstatement of the Law, 2d, Restitution (tentative draft # 2)—April 6, 1984, Section 31, f, at p. 36) provides:

f. Subrogation to a lien or charge on property. When conflicting security interests in the same collateral exist, or have existed, the holder of a junior interest may be denied a priority that would otherwise be assigned to it under an order of subrogation that preserves a senior interest.

. . . .

Subrogation to prevent the advancement of a junior interest is appropriate only when, if it were denied, the holder of that interest would otherwise be unjustly enriched.

22, 166 So. 409 (1936); Duke v. Kilpatrick, 231 Ala. 51, 163 So. 640 (1935); Whitson v. Metropolitan Life Ins. Co., 225 Ala. 262, 142 So. 564 (1932); Jefferson Standard Life Ins. Co. v. Brunson, 226 Ala. 16, 145 So. 156 (1932); McKleroy v. Dishman, 225 Ala. 131, 142 So. 41 (1932); Whittle v. Clark, 219 Ala. 161, 121 So. 530 (1929); Shields v. Hightower, 214 Ala. 608, 108 So. 525 (1926); Stone v. Davenport Bros., 200 Ala. 396, 76 So. 312 (1917); Thrasher v. Neely, 196 Ala. 576, 72 So. 115 (1916); Faulk v. Galloway, 123 Ala. 325, 26 So. 504 (1899); Collateral Investment Co. v. Pilgrim, 421 So.2d 1274 (Ala.Civ. App.1982); Ala.Code Section 8-3-2 (1975); Ala. Code Section 8-3-11 (1975); D. Dobbs, Remedies Section 4.3, 4.9 (1973); Annot., 37 A.L.R. 384, "Subrogation of purchaser who discharges superior lien as part of purchase price as against recorded junior lien"; Annot., 113 A.L.R. 958, "Subrogation of purchaser who discharges superior lien as part of purchase price, as against recorded junior lien"; 50 Am.Jur. Subrogation Section 80 (1956); 73 Am.Jur.2d Subrogation Section 76 (1964); Restatement of the Law, 2d, Restitution Section 31 comment (f) (1984).

. . . .

The case may be one in which property burdened with two liens is sold for new value, and the purchaser discharges the senior lien without knowledge of the junior one, and the latter is not divested by the sale. See Illustration 14. In either case, absent a remedy for the transferee, the junior lienholder would be unjustly enriched by the advancement of his lien.

In these circumstances the transferee's lack of care to discover the existence of the junior lien, by consulting public records or otherwise, is not alone a reason to withhold subrogation.

. . . .

14. Property of D is subject to a judgment lien and to a mortgage, held by A, senior to the lien. B purchases the property, paying A's mortgage in full at the closing. B is unaware of the judgment lien. Upon learning of it he may assert either an equitable lien on the property senior to the judgment lien or subrogation to the mortgage. In either case the measure of the right is the amount of the mortgage debt when paid, together with interest that would have accrued on it, if it had not been paid, over a not unreasonable period required for B to discover his mistake and to establish his remedy.

In *Stone v. Davenport Bros.* 200 Ala. 396, 76 So. 312 (1917) the Supreme Court allowed an assuming grantee of a mortgage to become subrogated to the rights of the original mortgagee upon payment by such grantee as against creditors of the original owner. In the facts of the instant case it is clear that the Criddles could have ascertained the recording the certificate of judgment and they may have been guilty of *simple* negligence by failing to check the chain of title immediately before closing the transaction. However, the law of Alabama requires culpable negligence—simple negligence is insufficient. *Whitson v. Metropolitan Life Ins. Co.*, 225 Ala., 262, 142 So. 564 (1932) provides:

[3-5] The rule established by the weight of authorities, however, is that one who advances money to discharge a prior incumbrance at the instance of the mortgagor need not exercise the highest degree of care to discover an intervening incumbrance of the title, and mere constructive notice, imputed from the existence of recordation, is not sufficient to preclude him from invoking the doctrine of equitable subrogation in the absence of culpable negligence.

See also *Federal Land Bank v. Henderson, Black & Merrill Co.*, 253 Ala. 54, 42 So.2d 829, 834 (1949).

Here, when the grantees, Dennis B. Criddle and Regina S. Criddle paid the superior mortgage on November 22, 1985, they became subrogated to the rights of the mortgagee, Helen Sanders and Jessie C. Sanders. On October 22, 1985, (the date that C.I.T. Financial Services recorded its certificate of judgment), there was a prior mortgage to the Sanders and the judgment lien was subordinate to this prior mortgage. Upon payment on November 22, 1985, C.I.T. would have been unjustly enriched by the Criddle's payment of the prior mortgage and elevation to a first position rather than a second position. Subrogation is proper to the extent of actual amount paid of $8,773.19 plus interest from November 22, 1985 at the mortgage contract rate.

In further support of the claim of the Criddles, there was testimony that the Criddle's had gone into possession and had made improvements on the land, had hired a bulldozer to go on the land and had cleared some of the land off. In *Gulf Oil Corp. v. Beck*, 293 Ala 158, 300 So.2d 822 (1974) the Supreme Court held that where a purchaser had gone into actual possession under an unrecorded deed, that it was notice to a subsequent judgment creditor of the vendors so as to prevent the judgment creditor's lien from attaching so that possession by the complainant was constructive notice of their title so that C.I.T. acquired no lien on the property by virtue of its recorded certificate of judgment.

This memorandum shall constitute findings of fact and conclusion of law pursuant to Bankruptcy Rule 7052. A separate or-

der will be entered in accordance with the foregoing.

## AMENDED ORDER GRANTING RIGHT OF SUBROGATION

This matter came before the Court on the Complaint of Dennis B. Criddle and Regina S. Criddle to clear title to 10.5 acres sold to the Criddles and also for subrogation by the Criddles to the mortgage of Helen and Jessie C. Sanders. After trial on the merits, submission of briefs and consideration of the applicable law, it is the opinion of this Court that the Criddles are entitled to equitable subrogation by the payment of the total amount due under the mortgage to Helen and Jessie C. Sanders.

Wherefore, it is by the Court

ORDERED, ADJUDGED AND DE-CREED:

1. That the complaint of the Criddles to be equitably subrogated to the rights of the first mortgagee is due to be and is hereby GRANTED.

2. Subrogation is to be had to the entire mortgage plus interest from the date of payment, being November 22, 1985.

3. Said interest shall be the mortgage rate of interest and shall be to the extent of one-half of the amount actually paid by the Criddles. The amount actually paid by the Criddles being $8,773.19.

4. C.I.T. Financial Services is hereby established as a secondary lienholder.

DONE AND ORDERED this 3rd day of August, 1988.