This case presents two issues of first impression in Alabama: whether the execution of a mortgage by one joint tenant severs the joint tenancy and to what extent property is subject to an unsatisfied mortgage after the death of a mortgaging joint tenant.
In August 1992, Madelaine Stewart ("the mother") bought a house for the use and benefit of her daughter, Linda Stewart Sanders ("the daughter"), who was going through divorce proceedings. The mother paid an equity amount of $6786 and assumed an existing mortgage in favor of Wachovia Mortgage Company. The daughter lived in the house and made the monthly mortgage payments to Wachovia.
In the spring of 1993, the daughter applied for a loan from AmSouth Mortgage Company to refinance the mortgage indebtedness at a lower interest rate. The daughter told the AmSouth loan officer that the title to the house was in her mother's name. The daughter explained to the loan officer
 "that at the time of the divorce when she moved out of her [marital] home she . . . was unable to qualify for a mortgage and that her mother had purchased this home with the understanding that as soon as [the daughter] could qualify, that she would refinance the home and put the mortgage in her own name."
The loan officer informed the daughter that the property "would need to be deeded into [the daughter's] name in order to refinance it and pay off her mother's mortgage."
In May 1993, the mother executed a warranty deed conveying title to herself and her daughter "for and during their joint lives and upon the death of either of them, then to the survivor of them in fee simple." The deed was properly recorded on May 18, 1993.
The daughter gave the loan officer a copy of the deed. At trial, the loan officer admitted that she saw the deed and that she was "aware of the fact before [she] made this mortgage to [the daughter] that the house was jointly owned by [the mother] and [the daughter]."
In June 1993, the mother and the daughter went to the office of AmSouth's lawyer to close the loan. The lawyer explained to the mother that the proceeds of the AmSouth loan would be used to pay off the mother's mortgage to Wachovia. The mother reviewed all the documents and asked AmSouth's lawyer if there were any papers for her to sign. The lawyer told her that she did not need to sign anything. The daughter alone signed the note and mortgage.
At trial, the AmSouth lawyer testified that, at the time of the closing, AmSouth had not furnished him with the deed and he was not aware that the mother and the daughter owned the property jointly. He further explained:
 "This was during what we call the glut of refinancing. We were doing forty of these in a given day, literally, and we were sending abstracts out to abstract companies. Abstract companies were behind. I did know from AmSouth that the deed was to be conveyed from [the mother] to her daughter. . . . So when this particular loan came up on that given day the abstract had not come back to me. I called the abstract [company] and got what I commonly call 'a verbal,' which is done by one of my real estate secretaries. They came back and said . . . 'there are no liens or judgments on the property.' Unfortunately, I presumed the deed had been transferred and strictly into [the daughter's] name and not knowing that we did not request that [the mother] sign the mortgage. If I had seen the abstract and if I had seen the deed then I would have had to insist [the mother] sign the mortgage. . . ."
Less than one month after the closing, the daughter died.
Claiming to be the owner of an undivided one-half interest in the property as a tenant in common, and alleging that the property could not be equitably divided, the mother filed a complaint for sale for division of the *Page 249 
proceeds. See Ala. Code 1975, § 35-6-20. After a nonjury trial, the court denied the relief requested in the mother's complaint.
The court ruled that the mother was the sole owner of the property, subject to a mortgage in favor of AmSouth. It determined that "AmSouth, by virtue of paying in full the first mortgage, was subrogated to all the rights and privileges of the holder of the . . . first mortgage." The mother appealed, and the Alabama Supreme Court transferred the cause to this court pursuant to Ala. Code 1975, § 12-2-7(6).
The facts are essentially undisputed. Therefore, the ore tenus presumption of correctness does not apply. InterstateInvestment Corp. v. Rose Care, Inc., 631 So.2d 836, 839
(Ala. 1993). Because the issues presented involve the application of the law to the facts, we must review the evidence de novo to see if it supports the judgment. Id.
 Severance of the Joint Tenancy
The mother's execution of a deed conveying title to herself and her daughter "for and during their joint lives and upon the death of either of them, then to the survivor of them in fee simple" created a joint tenancy with right of survivorship. SeeNunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972).
 "Under the joint title with survivorship . . ., neither party [can] convey the entire property. Each own[s] a one-half interest in the property while, at the same time, each own[s] the whole. A . . . conveyance by either of his or her one-half interest . . . destroy[s] the joint tenancy and create[s] a new tenancy in common, with the grantee owning a one-half interest as tenant in common with the non-conveying joint tenant, thereby destroying the survivorship interest. See generally Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972)."
Dominex, Inc. v. Key, 456 So.2d 1047, 1060 (Ala. 1984) (emphasis in original).
Although we have found no Alabama appellate decision addressing the question whether a mortgage by one joint tenant severs the joint tenancy, the rule at common law was that "a mortgage was a conveyance, so it necessarily destroyed the unities of title and interest." 4 Thompson on Real Property § 31.08(b) at 49 (Thomas ed. 1994).
"Alabama classifies itself as a 'title' state with regard to mortgages." Trauner v. Lowrey, 369 So.2d 531, 534 (Ala. 1979). See also Dominex v. Key, 456 So.2d at 1052. "Execution of a mortgage passes legal title to the mortgagee. The mortgagor is left with an equity of redemption, but upon payment of the debt, legal title revests in the mortgagor. § 35-10-26, Code 1975." Trauner v. Lowrey, 369 So.2d at 534 (citations omitted).
 "In jurisdictions in which a mortgage ordinarily operates to transfer the legal title, a mortgage by a joint tenant, which involves such a transfer, will no doubt cause a severance of the joint tenancy."
2 H. Tiffany, The Law of Real Property § 425 at 210 (3d ed. 1939).
 "At common law under the title theory of mortgages if one joint tenant mortgaged his interest this became a tenancy in common which was not restored to a joint tenancy on payment of the mortgage."
4 G. Thompson, The Law of Real Property, § 1780 at 36-37 (1979 Repl.).
The rule that a mortgage by one joint tenant operates to destroy the joint tenancy in a "title" state is so well accepted that one modern commentator has observed:
 "It is a rare (or negligent) commercial lender who would accept a mortgage from a joint tenant without first seeing that the joint tenancy was severed or that all the joint tenants signed."
4 Thompson on Real Property § 31.08(b) at 49 (Thomas ed. 1994). Based on the foregoing authorities, we hold that the trial court erred when it concluded that, upon the death of the daughter, the mother became the sole owner of the property.
When the daughter mortgaged the property, she severed the joint tenancy, destroyed the survivorship provision, and created a new tenancy in common. At that point, both mother and daughter had an undivided one-half interest in the property as tenants in common, with the daughter's interest subject to the AmSouth mortgage. *Page 250 
Because the survivorship provision of the joint tenancy had already been destroyed by the daughter's mortgage, the mother acquired no greater estate upon the death of the daughter. She still had an undivided one-half interest in the property as a tenant in common. The other tenant in common was the daughter's estate. The mother's interest was not subject to the AmSouth mortgage because the mother had not signed the note and mortgage and had not conveyed an interest to AmSouth. SeeDominex, Inc. v. Key, 456 So.2d at 1060; 4 Thompson on RealProperty § 31.08(b) at 49.
 Equitable Subrogation
AmSouth argued at trial and now maintains on appeal that because it paid off the mother's mortgage to Wachovia it should be equitably subrogated to Wachovia's position with respect to payment of the mortgage. Equitable subrogation allows a lender who advances funds to a debtor to extinguish a superior lien, but who is ignorant of an intervening junior lien, to take priority over the junior lien. See, e.g., Brooks v. ResolutionTrust Corp., 599 So.2d 1163 (Ala. 1992); Federal Land Bank ofNew Orleans v. Henderson, Black, Merrill Co., 253 Ala. 54,42 So.2d 829 (1949); Whitson v. Metropolitan Life Ins. Co.,225 Ala. 262, 142 So. 564 (1932). Accord In re Hubbard, 89 B.R. 920
(Bankr.N.D.Ala. 1988). See generally P. Davis, Tilley's AlabamaEquity § 15-2(b) (3d ed. 1994).
 "The elements of equitable subrogation are as follows: (1) the money is advanced at the instance of the debtor in order to extinguish a prior incumbrance; (2) the money is used for that purpose with the just expectation on the part of the lender for obtaining security of equal dignity with the prior incumbrance; (3) the whole debt must be paid before subrogation can be enforced; (4) the lender must be ignorant of the intervening lien; and (5) the intervening lienor must not be burdened or embarrassed."
Collateral Investment Co. v. Pilgrim, 421 So.2d 1274, 1276
(Ala.Civ.App. 1982). The trial court applied the doctrine of equitable subrogation to the facts of this case when it concluded that "AmSouth, by virtue of paying in full the first mortgage, was subrogated to all the rights and privileges of the holder of the . . . first mortgage."
Although the principles of equitable subrogation have been used to reorder priorities among encumbrances, they have not
been used to reform instruments or to "cure" defective conveyances. AmSouth's argument does not ask for a mere reordering of priorities among encumbrances. It seeks, in effect, to "reform" the conveyance by the daughter into one executed by both the mother and the daughter. The trial judge apparently had a "reformation" theory in mind when he observed, "I believe [the mother] would have signed the mortgage if [AmSouth's lawyer] had told her to."
The parties, however, did not argue, either at trial or on appeal, that the note and mortgage should be reformed on the basis of mutuality of mistake. We do not think that theory is applicable to the facts of this case, see Beasley v. MellonFinancial Services Corp., 569 So.2d 389 (Ala. 1990), and we refuse to expand the doctrine of equitable subrogation to accomplish that result here.
Even if AmSouth were seeking a mere reordering of priorities among lienholders, however, it would not be entitled to equitable subrogation. "[A] party seeking subrogation [must make] a prima facie showing of absence of knowledge or notice." P. Davis, Tilley's Alabama Equity § 15-2(b) at 298 (3d ed. 1994). Given of the testimony by the AmSouth loan officer that she was "aware of the fact before [she] made this mortgage to [the daughter] that the house was jointly owned by [the mother] and [the daughter]," we must conclude AmSouth did not meet its initial burden of showing that it was without knowledge of the joint tenancy deed. AmSouth was not entitled to equitable subrogation, because it was not ignorant of the fact that mother and daughter held joint title to the property.
" '[M]ere constructive notice, imputed from the existence of recordation, is not sufficient to preclude [a party] from invoking the doctrine of equitable subrogation in the absence of culpable negligence.' " Federal Land Bank of New Orleans v.Henderson, Black, *Page 251 Merrill Co., 253 Ala. at 61, 42 So.2d at 834 (quotation omitted); Brooks v. Resolution Trust Corp., 599 So.2d at 1165;Whitson v. Metropolitan Life Ins. Co., 225 Ala. at 266,142 So. at 567. However, a party who seeks subrogation must " 'be ignorant of [an] intervening encumbrance or right, and cannot shut his eyes and ignore facts brought to his knowledge, reasonably sufficient to invite diligent inquiry, which, if followed, would result in actual knowledge.' " Federal LandBank of New Orleans v. Henderson, Black, Merrill Co.,253 Ala. at 61, 42 So.2d. at 834 (quotation omitted). Because AmSouth had actual knowledge of the joint tenancy deed, it was culpably negligent in failing to have the mother sign the note and mortgage.
AmSouth argues that if the mother obtains the property free and clear of the mortgage, she will receive a windfall from AmSouth's having paid off her debt to Wachovia. In answer to that argument, we can only state that the equitable doctrines that might, under other circumstances, afford relief are unavailable here because of AmSouth's culpable neglect and the mother's freedom from fault. The "equitable lien" concept, for example, does not help AmSouth, because "knowledge of an adverse claim to the title is fatal to the . . . claim for [an equitable lien]." Manning v. Wingo, 577 So.2d 865, 869
(Ala. 1991); Gresham v. Ware, 79 Ala. 192, 199 (1885).
The trial court erred by denying the mother's request for a sale for division and by holding that her interest in the property was subject to the AmSouth mortgage.
The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THIGPEN, YATES, and MONROE, JJ., concur.
ROBERTSON, P.J., concurs specially.